### LEWIS MOORE v. THE STATE.

*No. 866. Decided May 6th, 1896.*

1. **Jurisdiction—Two Courts in Same County—Transfer of Cases.**

There are two District Courts in McLennan County. The act constituting them only provides for a grand jury in one of said courts, but authorizes the transfer of cases from one court to the other. Held: Constitutional, and a transfer of a criminal case from the court in which the indictment was presented to the other District Court conferred jurisdiction on the latter to try the case.

2. **Robbery—Indictment—Description of Money.**

Where an indictment for robbery described the money taken as, "two dollars in silver coin money of the United States, of the value of two dollars and three copper cent pieces, each of the value of one cent." Held: The description was sufficient.

3. **Newspaper in the Jury Room—New Trial.**

On a trial for robbery, where it was made a ground for motion for new trial, that the jury had received other testimony in the case after their retirement to consider of their verdict; and it appeared, in this connection, that a newspaper, containing an announcement that defendant was on trial for the robbery—giving a statement of the transaction—and stating that one of the defendants had already been tried and convicted, and that this defendant was under indictment for murder in one county, and other minor offenses, and a juror made affidavit that he did not read the article until after they had agreed upon defendant's guilt, and that none of the other jurors had read it, so far as he knew; and that, after reading it, he agreed to a verdict of five years less than he had fixed upon before, and that the article did not influence his verdict in any manner. Held: That it did not appear that defendant was prejudiced by said newspaper, and the verdict would not be disturbed.

APPEAL from the District Court of McLennan. Tried below before Hon. L. W. GOODRICH.

This appeal is from a conviction for robbery, the punishment being assessed at ten years' imprisonment in the penitentiary.

This is a companion case to Will Burries v. State, ante p. 13.

No statement necessary.

*Cunningham & Cunningham,* for appellant.

*Mann Trice,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of robbery, and given ten years in the penitentiary, and from the judgment and sentence of the lower court he prosecutes this appeal. Appellant made a motion to dismiss this case and quash the indictment, on the ground that the indict-

ment was presented in the District Court of the Fifty-fourth Judicial District, and the Nineteenth District Court had no jurisdiction to try him. Both of said courts are District Courts of McLennan County. The act under which they were constituted, provides that the grand jury can only be empaneled by the judge of the Fifty-fourth Judicial District, and also authorizes the transfer of cases from one District Court to the other. There is nothing in the Constitution inhibiting this practice. Appellant also moved to quash the indictment, on the ground that the money was not sufficiently described. The allegation in the indictment is, "two dollars in silver coin money of the United States, of the value of two dollars, and three copper cent pieces, each of the value of one cent." As has been held by this court, the description of the silver money is sufficiently averred. See, Menear v. State, 30 Tex. Crim. App., 475; Kirk v. State, 35 Tex. Crim. Rep., 224. The other questions raised on the indictment are not necessary to be noticed. Appellant made a motion for a new trial, on the ground that the jury received other evidence in the case after their retirement, while they were in the jury room considering of their verdict. The other testimony is alleged to be a copy of the Daily Evening Telephone, a newspaper of Waco, Texas. which was in the jury room; the extract alluded to being as follows: "Held up Allison Harrison, or at least, that is the charge against Lewis Moore, who has been on trial to-day before Judge Goodrich. Charge of murder also against Moore at Dallas. His accomplice sent to prison. Some minor charges. Lewis Moore, charged with holding up Deputy Postmaster Allison Harrison on October 10th, 1895, was brought before Judge Goodrich this morning for trial. The forenoon was consumed in empaneling a jury, and in the afternoon the trial proceeded. The public will remember the facts in the case. Mr. Harrison was held up on South Fifth street about 10 o'clock at night, and robbed of a small amount of money. There were two men, and one of them—Will Burries—was convicted at the last term of the Fifty-fourth District Court, and sentenced to ten years in the penitentiary. Lewis Moore was also arrested for the offense, and has been in jail ever since. He is a smooth-faced young man, and looks to be about 22 years old, and there is a restless look about the eyes, which gives him the appearance of being older than that. He is under indictment in Dallas County for murdering Officer Pate, last year, and, if convicted on this count, it will go hard with him. There are also three or four minor charges against Moore in Western Texas, but, in view of the serious trouble he is in here and in Dallas, those have been withdrawn." In response thereto, the State filed the following affidavit: "Before me, the undersigned authority, on this day personally came Ben Kennedy, Jr., who, after being duly sworn, says, on oath: That he was one of the jurors in the trial of the case of the State v. Lewis Moore. That after the jury had retired to consider of their verdict, and before they had agreed on a verdict, he read the article in the Evening Telephone, a verbatim copy of which is contained in defendant's motion for a new trial. Before

any one of the jury had read the article, the jury had all agreed that the defendant was guilty, but we had not agreed upon a term of years to award as a punishment. While we were deliberating on the punishment to assess, and before I had read the article in the Telephone, one of the jury, in discussing the punishment to give Moore, also discussed the question of the punishment given to Burries, his partner; and it was stated by one or two of the jurors that the defendant ought to have about the same punishment as Burries. While this discussion was going on, one of the jurors told some of the jurors the number of years Burries got when he was convicted, and I heard him make the statement. At this time there was one or two of the jurors that were holding out for five years, some were for ten, and myself and one other man were for fifteen years, while others were for terms of twelve years, and so on down to five. I can state positively I was not influenced by the article I read in the paper. I found the paper in the room where the jury slept, lying on a table, and when I read it I put it back on the table. I do not know whether any other of the jury read the paper or not. I was not influenced at all by the discussion by the jurors of Burries' punishment, and finally agreed to a five years less punishment than I was in favor of. I was in favor of fifteen years before I read the article. [Signed] Ben Kennedy." "Sworn to and subscribed before me this 11th day of February, 1896. J. B. Earle, Justice Peace, Precinct No. 1, McLennan County." The appellant not only fails to show that said newspaper publication prejudiced him, but it is affirmatively shown by the State that the same did not injure him. The juror who saw said article states positively that he did not know whether any of the jurymen read the paper or not, that it did not influence him at all, and that he finally agreed to a five years less punishment than he was originally in favor of, after he had read the article. Before this court would feel authorized to disturb the verdict on account of the jury receiving such evidence, it must be made to appear that it operated to the prejudice of the appellant. The judgment is affirmed.

*Affirmed.*