GUS ALLEN v. THE STATE.

No. 2526. Decided October 22, 1902.

**1.—Manslaughter—Insult to Female Relative—First Meeting—Charge.**

On a trial for murder, where the defense was insulting remarks by deceased about defendant's wife, and it appeared that defendant had sought deceased for an explanation, and at the interview shot and killed deceased, Held, that in the absence of any requested instruction by the defendant as to the character of the meeting between the parties, a charge upon manslaughter was sufficient which instructed the jury that, if defendant slew deceased on the first meeting, in heat of passion, because of the insult to his wife, it would be manslaughter and not murder.

**2.—Jury and Jury Law—Prejudice of Juror.**

If there is testimony tending to show from remarks and declarations of a juror, made before the trial, indicating prejudice, or that he had formed an opinion against defendant, and this was unknown to defendant at the time he was taken upon the jury and qualified; but it is shown by other testimony that such remarks, if made, were jocular, or he, the juror, explained their meaning as not indicating a formed opinion; or if the remarks were denied by the testimony of the juror and other witnesses, then it is a

question for the judge to decide as to the fairness and impartiality of the juror; and unless it clearly appears that he has abused his discretion, his finding will not be disturbed nor the case reversed on that account.

**3.—Same.**

Where jurors are attempted to be impeached by affidavits of others for remarks indicating an opinion formed against defendant, and said jurors, in their affidavits, controvert said affidavits and deny or explain all that occurred between themselves and such other persons and show they had no occasion to be prejudiced or unfair, the finding by the judge that they were fair and impartial will not be disturbed.

Appeal from the District Court of Red River. Tried below before Hon. Ben H. Denton.

Appeal from a conviction of murder in the second degree; penalty, twenty-five years imprisonment in the penitentiary.

Appellant was charged by the indictment with the murder of Sam Steinlein, on the 5th day of December, 1900, by shooting him with a pistol.

The statement of facts is quite voluminous, but the theories upon which the case was tried on the evidence adduced are concisely but sufficiently stated in the opinion below. The opinion also states fully all the facts pertaining to the questions impugning the impartiality of the jurors.

*E. W. Fagan,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of twenty-five years.

The theory of the State was to the effect that because deceased, who was a merchant in the town of Clarksville, had discharged appellant, who was in his employ, appellant armed himself, sought out deceased, and, without any provocation on his part or demonstration, shot him down; that this was murder, at least, in the second degree. This theory was strongly supported by evidence. Appellant's contention, supported by his own evidence and that of some other witnesses, was that deceased discharged him from his employ, and that subsequently deceased made remarks about appellant and his wife derogatory of her character; and on the morning of the homicide, having heard of these remarks, he armed himself, sought deceased for an explanation, and that deceased made some demonstration when he approached him, which caused him to believe that he was about to attack him, and that he shot him down in self-defense.

There are two assignments of error which appellant insists should cause the reversal of the case. He contends that the charge of the court failed to define the character of meeting after the insult had been communicated, which would authorize him to slay deceased and rely on manslaughter; his contention being that the jury might believe, because

he armed himself and sought deceased on account of the insult, that this was not the character of meeting which would give him the benefit of manslaughter. We agree with appellant that the meeting provided by statute may be either casual or intended, and, if the court had limited his instruction to a casual meeting, most assuredly this would have been error. However, the court gave a comprehensive charge on this subject, simply instructing the jury that, if appellant slew deceased on the first meeting, in heat of passion, because of the insult to his wife, it would be manslaughter, and not murder. There was nothing special in the case calling for a further charge on this subject. Nor did the appellant ask any special instruction defining the character of the meeting which would authorize him to rely on manslaughter, and the question was only raised in the motion for a new trial. There was no error in the action of the court on this question.

The other ground relied on by appellant is the alleged prejudice of some of the jurors who tried the case. The affidavits raising this issue question the impartiality of jurors Jack Dinwiddie, L. L. Taley, and J. W. Barnett. It is alleged of Dinwiddie that he was a member of the grand jury in the interim between a former trial of appellant's case and the present trial, and that the grand jury had under investigation cases against Joe Henry, a material witness for defendant for perjury in the former trial of the case, and against Worley for bribery of witnesses on said former trial; that the juror Dinwiddie interested himself in said matters. The affidavit of Tomlinson says that he thought Dinwiddie made a statement before the grand jury in reference to C. A. Worley; that he said that somebody else said that Worley offered some one a sack of money to swear something in the Gus Allen case, and if it was so that Worley ought to be indicted for bribery; that he said about Joe Henry that his reputation over in Franklin County was bad, calling over a lot of names by whom his reputation could be proven. The affidavit of Parks states that he does not remember hearing Dinwiddie say anything about the matter, but it was talked of before the grand jury; that he thought he heard Dinwiddie say something about going to Franklin in connection with the investigation, but did not remember what he said about it. Easterling in his affidavit states that Dinwiddie came to his house and camped near there, some time after the homicide, and on that occasion asked him about Joe Henry, a witness for Gus Allen, and if he knew anything about the case. He thereupon told Dinwiddie that shortly after the homicide Henry came to his house and told him that he witnessed the murder; that it was done in cold blood. Fowler stated that he was a member of the grand jury, in which the matter of the conduct of Henry and Worley was being investigated; that he heard Dinwiddie say that he had been to Franklin County, and that he thought there was a man from Franklin County who was acquainted with Henry in town, and that he would go down and see him, and that if he found him he would get some information about the case. Rose, another grand juror, says that during the session of the grand jury he heard Dinwiddie in the

conversation about the Allen case say that Worley ought to be indicted for bribery, and that Joe Henry ought to be indicted for perjury, and that he had been in Franklin County, and had heard while there that Joe Henry had a bad reputation for truth and veracity. It was also shown by appellant that at the former trial Dinwiddie was present, and should have heard some of the witnesses testify. Dr. Green testified that on one occasion Dinwiddie told him that Henry had better look out, that he would likely be indicted for perjury.

The State controverted these affidavits, and showed, both by these witnesses and others, that there was really no investigation of any case against Henry for perjury or Worley for bribery before said grand jury. The matter was mentioned, but no attempt was made to indict them. On this subject J. C. Meade, the district attorney, testified, in substance, that he stated to the grand jury, and he thought Dinwiddie was present, about what he had heard about Worley offering some one from Titus County or Franklin County some money to swear in the Gus Allen case, and he (Dinwiddie) said if he did he ought to be indicted for bribery or something to that effect. No process was ever issued to Franklin County for witnesses to testify before the grand jury for the purpose of indicting Henry for perjury, but probably there was a subpoena issued to Titus County or Franklin County for the witnesses for the grand jury in regard to C. A. Worley for bribery, but the witnesses never appeared and testified. Hoffman, the sheriff, testified that he had never sent Dinwiddie or any other person to hunt up testimony in Franklin County against Joe Henry's reputation or to indict him for perjury. J. B. Stanley also testified that he was a member of the grand jury, and was clerk of that body, and that said grand jury did not investigate Joe Henry with the view of finding a bill against said Joe Henry for perjury, and that no witness ever testified in said grand jury against C. A. Worley for the offense of bribery, and if the grand juror Dinwiddie ever expressed an opinion about said Joe Henry or said Worley in the grand jury room he did not hear it. Dinwiddie himself was examined, and testified that he was examined as a venireman at the former trial, and then qualified, and was challenged by the defendant; that he did not remain or hear any of the testimony, but returned immediately to his home; that he was a member of the grand jury at the November term, 1901, of the district court, and during the entire session of said grand jury no witness appeared and testified with reference to any charge against Joe Henry for perjury or against C. A. Worley for bribery or an offer to bribe; that he never expressed any opinion to anyone with reference to the said Joe Henry, as he had none. There was something said in said grand jury about some witnesses in Franklin County or somewhere else, to the effect that Worley had attempted to bribe a witness, but that he did not know that any subpoena was ever issued for such a witness. He further states that he did not state to any member of said grand jury that Joe Henry ought to be indicted for perjury, or that said Worley ought to be indicted for bribery, as there was nothing

to call for such remark; nor did he procure the names of witnesses to appear against said Henry and Worley, as he knew nothing about any such witnesses; nor did he say to Dr. Green of Franklin County that Henry had better look out or he would be indicted for perjury. His affidavit is lengthy, and he denies specifically all of the allegations made against him in regard to said ·Worley and Henry. He further shows that he had known Allen for ten or fifteen years, and that he had always been his friend, and that in 1900, when appellant was a candidate for tax assessor, he was one of his supporters; that he had no reason to have any prejudice against him, and that he had none, as he had testified on two former, occasions; that when the jury had the case under consideration some were in favor of finding defendant guilty of murder in the first degree; that he was one of those who insisted on murder in the second degree. We have stated substantially and in extenso the testimony pro and con regarding this juror, as appellant's principal attack is upon him; and it occurs to us that the testimony fails to show that the juror was not a fair and impartial juror,—in other words, that the judge was fully authorized in solving the question in ·favor of the impartiality and fairness of the juror. The rule deducible from the authorities on this question is, if there is testimony tending to show, from remarks and declarations of a juror made before the trial, indicating prejudice or that he had formed an opinion against the defendant, and this was unknown to appellant at the time he was taken on the jury, and qualified, but, on the other hand, testimony was introduced showing that such remarks, if made, were jocular, or he explained their meaning as not indicating the formation of a fixed opinion, or if the remarks are denied by the testimony of the juror and other witnesses, then it is a question for the judge to decide as to the fairness and impartiality of the juror; and, unless it clearly appears that he has abused his discretion, his finding will not be disturbed and the case will not be reversed on that account. Monroe v. State, 23 Texas, 210, 76 Am. Dec., 58; Nash v. State, 2 Texas Crim. App., 362; Hawkins v. State, 27 Texas Crim. App., 273; Shaw v. State, 32 Texas Crim. Rep., 155; Mayes v. State, 33 Texas Crim. Rep., 33; Driver v. State, 37 Texas Crim. Rep., 160; Belcher v. State (Texas Crim. App.), 37 S. W. Rep., 428; Rogers v. State, 40 Texas Crim. Rep., 355. Appellant has cited a number of cases in support of his contention. Among others he refers us to Henrie v. State, 41 Texas, 573; Sewell v. State, 15 Texas Crim. App., 62; Long v. State (Texas Crim. App.), 22 S. W. Rep., 409; Graham v. State, 28 Texas Crim. App., 582. An examination of these cases, however, will show that none of them militate against the rule above laid down. In Henrie's case the juror did not deny the statement attributed to him. In Sewell's case the juror admitted the declarations, but stated that he based his declarations solely upon the hypothesis that appellant was guilty, and it was further shown that he championed the cause of the State in the jury room, insisting upon the highest pen-

alty, thus carrying out the prejudice alleged against him. In Long's case there was not a complete denial by the juror, and in Graham's case there was no rebutting affidavit at all. In the case at bar it is shown that there was no real investigation of any accusation against the two witnesses, Worley and Henry, and, at most, the talk concerning them was of a general and casual character. If Dinwiddie said that he understood Henry had a bad reputation in his neighborhood, it was no more than was proven on the trial; but it would not follow that the juror was prejudiced against defendant, or that he would have acted on what he had heard, in the absence of proof as to the reputation of Henry. What he or others might have said in regard to Worley, that, if he bribed or attempted to bribe a witness, he ought to be indicted, was not improper. As to Dinwiddie going to seek testimony in connection with these matters, we take it that the appellant's testimony fails to support this issue. Besides, it is emphatically denied and contradicted by the State through the testimony of Dinwiddie. In what has been said we have conceded that a prejudice on the part of the juror against one or more witnesses testifying on behalf of appellant would be tantamount to prejudice against appellant. While this is not the language of the statute, yet it does occur to us that a liberal interpretation of the statute would involve this construction. We hold that the court acted correctly in overruling appellant's motion for new trial based on the ground of the alleged prejudice of the juror Dinwiddie, that his action was clearly within the rule above cited, and the facts here are not as strong as in some of the above cases.

As to the jurors Barnett and Taley, who are attempted to be impeached for fairness by the affidavits of other persons attributing to them remarks indicating the formation of an opinion adverse to appellant, these jurors in their affidavits meet the accusations in the affidavit of appellant's witnesses, and deny or explain all that occurred between them and such other persons, and show that they had no occasion to be prejudiced or unfair. The learned judge who tried the case was authorized, as he did, to find that they were fair and impartial jurors, and we do not feel inclined to disturb his finding. An examination of the whole record fails to disclose any error that would require a reversal of this case. The judgment is accordingly affirmed.

*Affirmed.*