## HOUSTON HOLT v. THE STATE.

No. 3678.   Decided February 13, 1907.

**1.—Murder in Second Degree—Charge of Court—Manslaughter—Self-Defense.**

Where upon trial for murder the theory of the State claimed unprovoked murder, and the defense threatening demonstrations by the deceased toward defendant and self-defense, and the court in his charge gave the statutory definition of manslaughter and confined the provocation to the time of the killing; there being no former grudges, etc., shown between the parties, and the homicide occurred upon a sudden altercation, the charge was not too restricted.

**2.—Same—Statutory Adequate Cause—Mitigating Circumstances—Implied Malice.**

Where upon trial for murder the court defined the statutory adequate causes in connection with his charge on manslaughter, and it was doubtful from the evidence whether manslaughter was in the case, it was not necessary to define by illustration the statutory adequate causes, nor was the court called upon to define mitigating circumstances more than was done in defining implied malice.

**3.—Same—Charge of Court—Self-Defense—All the Facts.**

Upon trial for murder there was no error in the court's charge that if the jury from all the facts and circumstances in evidence, as viewed from defendant's standpoint, found that at the time of the killing it reasonably appeared to defendant that the deceased was about to make an unlawful and violent attack upon him, etc., instead of using the word "any" instead of "all."

**4.—Same—Acts and Words of Bystanders—Bill of Exceptions.**

Where upon trial for murder, it was claimed that the sister of deceased used exciting language and conduct in the presence of the jury, and the bill of exceptions did not sufficiently show that what transpired was of a character calculated to unduly influence the jury, the same cannot be reviewed; although the court should have prevented any scenes of disorder during the trial.

**5.—Same—Interruption by Bystander.**

Where upon trial for murder, during the argument of one of defendant's counsel, a bystander interrupted him by giving his version of the evidence, and the court immediately directed the party to keep quiet and there was no exception taken to said party's remarks, there was no error; besides the defendant could have introduced testimony to have controverted said remarks if necessary.

**6.—Same—Misconduct of Jury—Verdict by Lot.**

Where upon motion for new trial after a conviction of murder, the affidavit of two of the jurors claimed that the verdict was reached by lot, and nine of the jurors testified that no such agreement was made, the court was authorized under the testimony to determine that the verdict was not reached by lot.

Appeal from the District Court of Denton. Tried below before the Hon. J. A. Barrett.

Appeal from a conviction of murder in the second degree; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

*J. H. Garnett* and *Alvin C. Owsley,* for appellant.—On question of statement by bystander: Hamilton v. State, 37 S. W. Rep., 432; McKissick v. State, 26 Texas Crim. App., 677; Ysaguirre v. State, 58 S. W. Rep., 1005; Holmes v. State, 42 S. W. Rep., 997; Terry v. State, 38 S. W. Rep., 987. On question of manslaughter: Ware v. State, 92 S. W. Rep., 1095; Freeman v. State, 81 S. W. Rep., 954; Cole v. State, 75 S. W. Rep., 529. On question of implied malice and mitigating circumstances: Swain v. State, 86 S. W. Rep., 335. On question of jury considering all circumstances: Tillery v. State, 24 Texas Crim. App., 251.

*F. J. McCord,* Assistant Attorney-General, and *Robert H. Hopkins, jr.,* for the State.—On question of conduct by bystanders: Weathersby v. State, 29 Texas Crim. App., 278. On question of misconduct of jury: Pruitt v. State, 30 Texas Crim. App., 159; McAnally v. State, 57 S. W. Rep., 832. On question of requested charges: Drake v. State, 29 Texas Crim. App., 295; Surrell v. State, id., 321; Stephens v. State, 33 Texas Crim. Rep., 101.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at seven years confinement in the penitentiary, and brings the case here on appeal.

The facts summarized are to the effect that Jim Holt, the father of appellant, owned some kind of a wagon-yard, or a place where horses were kept, and on the occasion of the homicide he, with deceased E. B. Street, and several other companions, were at said Holt's place of business drinking and carousing. Late in the evening appellant went home, leaving his father there. His mother prevailed on him to go back and bring his father home, as he was drinking. He drove the buggy back after his father, and went into the room, and told his father, who seemed to be under the influence of liquor, as well as some of the others, that his mother was anxious for him to come home, and that he had come after him. It seems some of the parties at this juncture proposed a stag-dance; they were arranging for this and some remark was made by the deceased to appellant suggesting that he, deceased, would take the little devil (appellant) as a partner. Some altercation ensued between these parties, and the State's theory is that appellant, without any provocation, pulled a pistol and began shooting deceased, inflicting mortal wounds, which caused his death in a short time. Appellant's theory is that deceased interfered to prevent his father from going home with him, and after some words passed between the parties, deceased made some threatening demonstration toward appellant, and appellant drew his pistol, which first fell on the floor, and one barrel exploded, and appellant then picked it up and continued to fire until he killed deceased. In the conduct of the case appellant relied on manslaughter, and self-defense. Appellant insists that the court erred in that portion of his charge relating to the law on manslaughter by failing to furnish the jury with any such example as would enable them to determine from the facts of this case what would be adequate cause, and in failing to instruct the jury what facts would constitute adequate cause, and by failing to apply the law to such facts, and in this connection, it is also insisted that the charge was too restrictive, in that it confined the provocation to the very time of the offense. An examination of the court's charge on manslaughter shows that the court gave the statutory definitions thereof, defining provocation, passion, and adequate cause. The court confined the provocation to the time of the killing. This in ordinary cases is in accordance with the statute. However, the courts usually instruct the jury that in determining the adequacy of the cause, they can look to all antecedent facts and circumstances connected with the homicide and bearing on the adequacy of the cause in order to determine whether the provocation at the time was sufficient. This charge does not do that, and this is one of appellant's criticisms. So far as we have been able to discover, there were no former grudges or antecedent troubles or disagreements between appellant and deceased, and all that occurred between themselves seems to have come up at the time or immediately before the homicide. Even if it be that manslaughter was in the case on account of some provocation by deceased at the time, yet it does not occur to us that the facts of this case present such other

features as rendered it necessary for the court to call the jury's attention to these matters as reflecting on the provocation and intensifying it. We take it that ordinarily, without being told to do so, the jury would look to what occurred at the time in the light of precedent events. There was no error in this matter.

It is also complained that the court failed to sufficiently define adequate cause and mitigation in connection with the charge on manslaughter. The court gave the statutory definition of adequate cause in that connection, and it was not necessary to illustrate this by any example. There was no statutory adequate cause in the proof, and as we view it, it is doubtful that manslaughter was in this case at all. So far as the question of defining mitigating circumstances is concerned, the court was not called on to define this more than was done. This part of the complaint is applicable to the court's charge on murder in the second degree, wherein the court uses the phrase in defining implied malice that the provocation arose without circumstances of mitigation or justification. These terms were treated in the court's definition of manslaughter and justifiable homicide, and the court was not called on to further define these terms in the charge.

The charge on self-defense is also criticised, because therein the court told the jury if from *all* the facts and circumstances in evidence, as viewed from defendant's standpoint, you find that at the time of the killing it reasonably appeared to him that said Street was about to make an unlawful and violent attack upon him, etc. Appellant objects, in this connection, to the word *all,* insisting that the court should have used the word *any* instead thereof. It seems to us this is hypercritical. The jury could scarcely review one fact of an isolated character, without reviewing and passing on all the facts connected therewith, and *all,* in this connection, would refer to and embrace any fact which, limited or modified by the other facts, or intensified by the other facts, would authorize self-defense.

Appellant insists that this case should be reversed on account of the misconduct of Miss Mollie Street in the presence of the jury. Bill of exceptions shows that after the conclusion of the argument and at the time court adjourned for dinner, said Miss Mollie Street, who was standing in the court room with her mother and sister, and near where the jury were passing, that she began to talk about the case and the treatment her deceased brother had received, and put her arms around said mother and sister and cried until said jury passed entirely out of the court room; that while this conduct was in progress appellant's counsel appealed to the court and asked the court to stop said scene, and, thereupon, the court asked said attorney for the defendant, in a quiet way, how he could stop it. The court explains this bill by stating that the language used by Miss Mollie Street was in regard to criticisms of the deceased by appellant's counsel, and that when the court's attention was called to the matter and it was suggested that Mrs. Street and her daughter would follow the jury

into the hall below, the court directed the sheriff to keep said parties in the court room until the jury had gone, which he did. While, of course, it should be the duty of the court to prevent any scene of disorder or anything liable to influence or excite the jury, yet we are not by this bill sufficiently informed as to what was said or what did transpire that was of a character calculated to unduly influence the jury. No expression of Miss Street is given, and all that we know is as explained by the court that she said something about some criticisms of her deceased brother indulged in by the attorney for the defendant. There might be a case where the facts disclose such undue conduct on the part of private prosecutors, or those connected with the prosecution, which would call on this court to interfere and reverse the case, but such case is not here disclosed and presented in this bill of exceptions.

The next bill shows that while Mr. Owsley, one of the attorneys for the defendant, in his closing argument was addressing the jury he made the statement that the testimony of Dr. Inge, witness for the State, had shown that the deceased was shot twice near the right groin, and that both shots entered from the front; that he had some recollection of having noticed a wound on the arm of the deceased, but that he made no examination of it for the reason that he regarded it as a trivial matter. He further stated that the State had thrown no further light on the subject, and that from all the testimony that had been introduced, a jury would be authorized to conclude that the wound in the arm was inflicted by the same shot that caused one of the wounds in the groin, and that the deceased was at that time reaching for his pistol, whereupon one W. T. Gann, who testified as a witness for the State, as to other matters, and who was then standing in the court room at the corner of the clerk's desk next to the jury and near the judge's bench, spoke out in a loud voice sufficiently distinct to be heard by each and all of the jurors, and stated "deceased's arm was crushed by the bullet right here," said Gann holding up his right arm in plain view of the jurors and indicated the place as being about half way between the shoulder and the elbow. It is claimed that this sudden act of said Gann was calculated to interrupt and confuse the counsel. The court explains this by stating that the only remark made by said Gann was "His right arm was crushed above the elbow." Immediately upon the making of this remark the court directed the witness to keep quiet. No exception was taken to Gann's remark. He did not use the other language set out in this bill nor did he hold up or exhibit his arm. Gann was standing at the back of Mr. Owsely when he made the remark and about twenty feet from the jury. As explained, we do not believe this matter presents error. The judge shows that no exception was taken to the remark of Gann. Nor does it appear that the court was asked to instruct the jury in regard to said matter. Furthermore, we would observe that appellant had the right at any time before the close of the argu-

ment to introduce testimony upon any disputed point, and if it was not true, as stated, that the wound in the arm was inflicted between the elbow and shoulder, appellant would have been permitted to have introduced evidence upon that point, if same was considered material by him.

It is further contended that a new trial should have been granted in the court below because of the misconduct of the jury in determining, the number of years they were to assess the punishment of appellant, by lottery. This allegation is supported by the affidavit of one J. C. Knight, a member of the jury, who states in his original affidavit, that after the jury retired they all agreed that defendant was guilty; that when they came to assess the punishment the jurors differed as to the number of years, nine being in favor of a term of five years, and two of a term of ten years, and one of a term of twenty years; that it was agreed among the jurors that the sum of forty-five years, which was the aggregate of the terms of nine jurors, and the two terms of ten years, and one term of twenty years, should be added together and divided by twelve, and that all the jurors stand by the amount thus obtained and make that their verdict. They added up these amounts and it came to eighty-five, which divided by twelve made seven and a little over, which over-plus was left off, and the verdict returned for seven years, and that all of the jurors did stand by their agreement as they made it. This same character of affidavit was made by C. S. Buckingham, another one of the jurors. The State contested this matter. Nine of the jurors testified that there was no agreement made; that something was said about adding up the various number of years which each juror was willing to give appellant, and somebody stated the result would be seven years and little over, but they did not agree to that and continued balloting; then went to supper, and afterwards came back and could not agree on the verdict that night, and the next morning they still considered the amount of punishment they would assess against appellant, and finally reached seven years. We believe the court, under the testimony, was authorized as he did to determine that the verdict was not reached by lot. We have examined the record carefully, and we believe the testimony sustains the findings of the jury, and there being no errors in the record, the judgment is affirmed.

*Affirmed.*