RAYMOND SANCHEZ v. THE STATE.

No. 18575.   Delivered April 7, 1937.

The opinion states the case.

*Dave Watson, James Tafolla, Jr.*, and *Schweppe & Schweppe*, all of San Antonio, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, six years in the penitentiary.

Appellant shot and killed one Cisneros at a drinking place in San Antonio. His plea on this trial was that one Chapa had drawn a knife on him shortly before, and had threatened to kill him, and that when deceased came up behind him, took him by the shoulder and pulled him around, he thought it was Chapa, and so believing shot. The proof shows that Chapa was put out of the place by the bartender shortly before the shooting and after the alleged threat. The proof further shows that appellant went into the place and pointed a pistol at one B, who testified that he and appellant were good friends, and that he remonstrated with appellant for his conduct; also that one Plata, in effect, scolded appellant for pointing the pistol at B. Appellant was not acquainted with Plata, and seemed to have taken offense at what Plata said, because Plata was a stranger to him, and it is shown that after Chapa was put out appellant and Plata resumed their argument. Deceased was a special officer, and he walked up to appellant, took him by the shoulder, and turned or pulled him around, and said "Quit arguing." When he did this appellant said "Leave me alone," or something like that, pulled his pistol out of his belt, and shot deceased, who died in a few minutes. B testified that he said to appellant: "Look Raymond, you have shot the wrong man," and that appellant said "Yes, I did." Appellant then walked out of the place, but surrendered later to officers. This was Christmas night.

Each of appellant's bills of exceptions has been carefully examined, and we find nothing in any of same seeming to call for discussion save as below appears. The court told the jury in his charge, and gave a special charge asked, in effect, that if when deceased pulled appellant around, the latter reasonably believed it to be Chapa, and that appellant had reasonable expectation or fear of death or serious bodily injury at the hands of Chapa,—and that he shot and killed deceased under such belief, fear and expectation, they should acquit; also telling the jury that in determining whether appellant so believed, the matter should be viewed from his standpoint at the time.

Appellant's bill of exceptions No. 18 sets up that when the jury were in retirement a telegram was delivered to one of them named Rudi apprising him of the death of his brother-in-law, and that this was without the knowledge and consent of

appellant or his attorneys. The bill sets up further that the fact of such death was made known to other jurors, and that discussion of same was had among them, and that appellant was injured thereby, and that he excepted to the refusal of the court to grant him a new trial based in part on this ground, stated in said bill of exceptions as follows:

"For the reason that it caused the jury to consider other and extraneous matters in arriving at their verdict and that the same was reasonably calculated to, and did, influence the jurors in arriving at their verdict in this cause."

We have gone over the testimony heard by the court when the motion for new trial was presented. Appellant set up in same, and proved by his witnesses, that the only thing in the telegram was the notice of death, and that no communication was had with the juror, or any of the jurors at said time, save to deliver the message. In this connection the juror Rudi, who was introduced by appellant, testified to the contents of the telegram, and also to the fact that other jurors saw the telegram, and that nothing was said by the deuphty sheriff, or messenger who brought the telegram, save to deliver it. At this point we call attention to the fact that it was agreed between the State and the accused, on the hearing of the motion for new trial, that the other jurors who were not introduced knew the same facts and would testify the same as the jurors who were introduced.

The State introduced no witnesses on the hearing of the motion. Appellant introduced Mr. Rudi and three other jurors, and each of these gentlemen testified that nothing was said to them by anyone at the time of the delivery of the telegram, and that while there was some discussion in the jury room of the fact of the death of the juror's brother-in-law, none of such conversation was of a damaging character, and the juror Rudi himself expressly told the other jurors not to consider the fact of his loss in any way, and not to be affected thereby. In this connection we might further state that the testimony showed that immediately upon retirement all the jurors voted in favor of guilty, and that before the telegram was received the jury stood eleven for a penalty of seven years and one for a penalty of five years, and that after the telegram was received the eleven jurors came down to six years and the one juror came up to six years. In other words, the record entirely negatives any suggestion or presumption of injury or prejudice resulting from the matter under discussion.

The whole matter was brought before the trial judge when

he heard the motion for new trial and overruled same. The rule applicable has been many times decided and approved by this court, holding that it is a question of fact, and its decision, if not showing an abuse of the discretion of the trial court, will be upheld by this court on appeal. In Sheffield v. State, 48 Texas Crim. Rep., 481, we said that the court had passed on the controverted facts alleged as showing misconduct, and had resolved them against the accused, and an affirmance was ordered. In Douglas v. State, 58 Texas Crim. Rep., 127, Judge Ramsey speaking for the court, we said:

"We have not infrequently held that matters of this sort are particularly cognizable by the trial court, and unless the conclusion reached by the court on the hearing of same is clearly wrong and unsupported by the testimony, we ought not to and can not interfere. Benevidas v. State, 57 Texas Crim. Rep., 170, 121 S. W., 1107; Holt v. State, 51 Texas Crim. Rep., 15; Fox v. State, 53 Texas Crim. Rep., 150; Goodman v. State, 49 Texas Crim. Rep., 185; Mayes v. State, 33 Texas Crim. Rep., 33; Cockerell v. State, 32 Texas Crim. Rep., 585; Driver v. State, 37 Texas Crim. Rep., 160, and Shaw v. State, 32 Texas Crim. Rep., 155. In the light of the entire record we are not prepared to say and hold that the conclusion of the court before whom this matter was fully investigated was wrong, and we would certainly be without warrant in concluding from this distance that it was so clearly wrong as to justify us in reversing and setting aside his judgment after hearing in person the evidence."

See, also, Fox v. State, 53 Texas Crim. Rep., 155; Johnson v. State, 53 Texas Crim. Rep., 339; Smith v. State, 52 Texas Crim. Rep., 351; Long v. State, 48 Texas Crim. Rep., 183; Allen v. State, 44 Texas Crim. Rep., 209.

In Moore v. State, 36 Texas Crim. Rep., 88, it was shown that a juror read a newspaper in the jury room containing many damaging statements relative to the accused. Upon a hearing of the motion for new trial it was further shown that this particular juror, at the time he read the paper mentioned, stood for fifteen years penalty, but after reading same he came to a ten year verdict. Judge Davidson, speaking for the court, said:

"The juror who saw said article states positively that he did not know whether any of the jurymen read the paper or not, that it did not influence him at all, and that he finally agreed to a five years less punishment than he was originally in favor of after he had read the article. Before this court

would feel authorized to disturb the verdict on account of the jury receiving such evidence, it must be made to appear that it operated to the prejudice of the appellant. The judgment is affirmed."

We think the bill under consideration fails to show any reversible error.

The remaining bill of exceptions complains of the fact that on the day after the receipt of the telegram above mentioned the son of juror Rudi, accompanied by the trial judge and a deputy sheriff, went to the door of the jury room where said son asked Mr. Rudi if they should send flowers and attend the funeral. Mr. Rudi told them to settle that among themselves. This is all that occurred at that time, and it all took place in the presence of Judge McCrory, the trial judge, who makes a statement for the purpose of the record that this is what transpired. We see no misconduct of the jury or anything in this occurrence to in anywise prejudice or affect the rights of the accused.

Finding no reversible error in the record, the judgment will be affirmed.

*Affirmed.*