### DAN SHEFFIELD v. THE STATE.

No. 3005. Decided June 23, 1905.

**1.—Theft of Horse—Charge of Court—Reviewing Evidence.**

Where the charge of the court in a case of horse theft properly presents all the issues raised by the evidence, there is no error and there is no necessity of reviewing the evidence in detail.

**2.—Same—Misconduct of Jury—Discretion of Court—Testimony Dehors the Facts—Affidavits.**

Where in a prosecution for horse theft the alleged misconduct of the jury

was presented by affidavits pro and con, and such misconduct consisted merely of immaterial matters dehors the facts, after the verdict had been reached, although before it was reduced to writing, and the court passed upon the controverted facts, the finding of the trial court against ground for new trial on said matter is conclusive and will not be disturbed.

Appeal from the District Court of Crockett. Tried below before Hon. J. W. Timmins.

Appeal from a conviction of theft of horse; penalty, two years imprisonment in the penitentiary.

The principal witness testified (as taken from appellant's brief) substantially as follows: (After having testified about having owned a ranch in Crockett County) he says: "I had sheep on the ranch, and also four head of horses and one two-year-old colt. I missed one horse about the first of March, 1904. It was what one would call a dark-brown horse or black horse, and was then about two years old. It was small and fat. I had sold my ranch to Boone Kilpatrick, and when I went to move my sheep to the Hat ranch about the 4th or 5th of March, 1904, I could not find this black colt. I hunted for it two or three days and failed to find it." * * * "The last time I saw this colt he was at the well drinking, on my ranch, in my pos-session and unbranded. He came up to the ranch house well every day to drink. He was gentle and never strayed far from the ranch house." * * * "I never owned but one ranch in Crockett County. I sold this ranch to Boone Kilpatrick in 1904. After selling the ranch I remained on it until the 5th or 6th of March. It was a part of the contract between us that I was to have authority to remain on this ranch for twenty days after I sold the same to Boone Kilpatrick. I did not give Boone Kilpatrick exclusive control of this ranch until the 5th or 6th of March, when I moved away. At this time my contract to remain on the ranch was not up. When I moved away, Boone Kil-patrick, with his family, was in the house on the ranch. Boone Kil-patrick came on the ranch about the latter part of February, and lived in a tent near the house on my ranch. My ranch consisted of twelve sections of land, and was in the Howard Well pastures, which con-tained about one hundred sections." * * * "The place where I last saw the colt was in Crockett County, Texas. I did not authorize any one to take the colt, or use him. It was unbranded, but had a white spot under one eye, caused from a halter, which I put on him to break him from sucking. He had a heavy, pretty mane." * * * "When he was returned to me he was fresh branded, being branded J B on left shoulder, and his mane cut off. I do not know who claimed this brand. I never authorized any one to take charge of this horse."

Boone Kilpatrick, on behalf of defendant, testified: "In February, 1904, I bought twelve sections of land, being the ranch then owned by C. M. Billings, the prosecuting witness in this case. I made the trade for the ranch on the 14th of February, 1904, and in the contract the said Billings was to remain on the ranch with his sheep and stock

for twenty days in order to give him time to hunt a place and pasture for his sheep. I moved on this ranch on the 20th of February, and took possession of same. I lived in the house on the ranch, and had part of my things in a tent because I had the house full of things. When I moved on the ranch I took my sheep with me and kept them on Billings ranch. Also took twenty head of horses. This ranch was not fenced. There was nothing to keep animals from ranging off this ranch. The ranch was in an enclosure known as the Howard Wells ranch, which consisted of about one hundred sections. When I moved on the ranch with my sheep C. M. Billings was not there that day. In my trade with Billings I was to have immediate possession of the ranch, only giving Billings a right to stay there for twenty days, being the 6th day of March. I had and kept continuous possession of the ranch from the time I moved on it. Billings started with the sheep from my ranch on the 2d day of March. I do not know on what day he got off the ranch. Billings left two mares and one horse, a little black stallion, on the ranch. I had entire control and possession of the Billings ranch from the time I moved my sheep on the same, and claimed possession of all stock then on the ranch. Billings told me that he would leave this colt and two others, which he left there with me to look after. Billings took the two mares from the ranch about the 10th or 12th. He sent the Rice boy and Roberts boy for these two mares. When Billings left he told me he would leave these three head of horses with me for a month anyway, and told me to have the defendant and my brother Ed to break this colt." * * * "Before he left Billings rounded up his horses and left three horses with me, including this colt." * * * "On or about the 20th of February, I met Mr. Billings in the road on his way to Sonora. He handed me the keys to his house, but said nothing about eating dinner in the house. According to our agreement Billings' time was up on the 6th of March." * * * "When I moved on this ranch this black colt was unbranded. Prosecuting witness, Billings, and my brother Ed branded it about the 25th or 26th day of February, 1904, at the horse lot, or pen, at the house on the Billings ranch. They branded the colt J B on the left shoulder. I told the defendant to get up this colt and break it." * * * "The defendant had authority from me to take this colt away with him and use him to break him." * * * "When the defendant left my ranch with this colt he was gone two or three days before he returned."

Dan Sheffield, the defendant, in part testified as follows: "I was at Boone Kilpatrick's ranch on the 9th day of March, 1904. I knew the horse that belonged to Billings, and the colt in controversy. It was then branded J B. Boone Kilpatrick then told me that Billings had left the black colt with him and had told him to have the colt broken, and told me to break the colt and try to make $2 or $3.

Chas. Billings also testified that he knew the defendant; that he was then living with Boone Kilpatrick, and that he told them before

he (witness) left that he would give them $5 to find the colt for him, and neither one said anything. This was after witness had hunted his colt and could not find him, and that he sent two boys to hunt the colt and they could not find him. The opinion otherwise states the case.

The appellant excepted to the following parts of the court's charge: "Animals when on their accustomed range are, in contemplation of law, in the possession of the owner." Ownership was laid in Charles Billings in the indictment.

The following main charge and special charges were given by the court upon the question of ownership and possession to which defendant excepted: * * * "But if you believe from the evidence beyond a reasonable doubt that the defendant, Dan Sheffield, at or about the time alleged in the indictment, in the County of Crockett, in the State of Texas, did fraudulently take from the *possession of Charles Billings* the property described in the indictment, without the consent of the said Billings, with the intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of him the said Dan Sheffield; and if you further believe from the evidence, beyond a reasonable doubt, that the said Billings, at the time of the taking (if there was any taking at all) was the *owner* of the property described in the indictment, it will be your duty to find the defendant guilty of the theft of said horse, and assess his punishment at confinement in the State penitentiary for a term not less than two, nor more than ten years."

"You are further instructed that if at the time the horse was taken, if taken, said horse was in the actual care, management and control of Boone Kilpatrick under the authority and by the consent of the said Billings, then said horse was not in the possession of said Billings. You are further instructed that if you find from the evidence that the defendant received said horse from Boone Kilpatrick under an agreement to break said horse and that the defendant had no intent to convert said horse to his own use or benefit, or if you have a reasonable doubt as to whether such are the facts, then you will return a verdict of not guilty."

Defendant's special instruction No. 1, granted by the court, is as follows:

"If you believe from the evidence that the said horse mentioned, at the time of the alleged theft, was under the actual care, management and control of D. B. Kilpatrick, or if you have a reasonable doubt thereof, you are instructed to acquit defendant."

*C. E. Spalding, C. E. Dubois, Wright & Wynne* and *Tayloe & Cornell,* for appellant.—Where ownership is alleged in the general owner, and defense offers evidence tending to show that at the time of the taking the alleged animal was in the actual care, control and management of another, it is error for the court to charge as com-

plained of without qualification, since if there be a general and special owner, an animal upon its accustomed range is in contemplation of law in the possession of the special owner.

If two charges upon a material issue be given which are contradictory, and which have the effect to neutralize each other, the jury is left without instruction upon such issue, and it becomes the duty of the higher court to reverse and remand the case. Bibby v. State, 65 S. W. Rep., 193; Blair v. State, 26 Texas Crim. App., 387; 9 S. W. Rep., 890; Arcia v. State, 28 Texas Crim. App., 198; 12 S. W. Rep., 599; Schauer v. State, 60 S. W. Rep., 249; Ry. Co. v. Robinson, 73 Texas, 277; 11 S. W. Rep., 327, and numerous cases cited as supporting it in Rose's Notes.

We believe there is no question that the animal alleged to have been stolen was shown to be on his accustomed range at the time it was taken. The testimony of Billings to the effect that the horse was gentle, never strayed far from the house, and watered every day at the ranch house well on his twelve section ranch, which was uncontradicted, shows this beyond question. We do not doubt the correctness of the proposition that an animal upon its accustomed range is in contemplation of law in the possession of its owner, as a general proposition. The decisions of our higher courts announcing this as the rule are numerous. However, it is just as well settled that when there is a special owner, one having actual care, control and management of the property, that an animal upon its accustomed range is then in contemplation of law in the possession of such special owner. Clayton v. State, 15 Texas Crim. App., 348; Prator v. State, 15 Texas Crim. App., 363; McAfee v. State, 14 Texas Crim. App., 668; Curlin v. State, 23 Texas Crim. App., 681; Lacey v. State, 31 Texas Crim. Rep., 78; 19 S. W. Rep., 896; Morrow v. State, 22 Texas Crim. App., 239; 2 S. W. Rep., 624.

On the question of misconduct of the jury: Hambright v. State, 84 S. W. Rep., 597; Dixon v. State, 79 S. W. Rep., 310; Ysaguirre v. State, 58 S. W. Rep., 1005; Blalock v. State, 62 S. W. Rep., 571; Sims v. State, 70 S. W. Rep., 90; Mitchell v. State, 33 S. W. Rep., 367; 36 S. W. Rep., 456; McWilliams v. State, 22 S. W. Rep., 970; Terry v. State, 38 S. W. Rep., 986; Tate v. State, 42 S. W. Rep., 595; Lucas v. State, 11 S. W. Rep., 443; McKissick v. State, 9 S. W. Rep., 296; Anschicks v. State, 6 Texas Crim. App., 534; Wyers v. State, 13 Texas Crim. App., 57.

*Howard Martin,* Assistant Attorney-General, and *W. A. Anderson,* for the State.—Simpson v. State, 85 S. W. Rep., 15.

BROOKS, JUDGE.—Appellant was convicted of horse theft, and his punishment fixed at confinement in the penitentiary for a term of five years.

The charge of the court properly presents all the issues raised by the evidence, and there is no necessity of reviewing it in detail.

Appellant also insists on the misconduct of the jury as ground for reversal, which is presented by affidavits pro and con. The court has passed upon the controverted facts, and resolved the same against appellant. We do not feel authorized to disturb the finding of the court. Furthermore, the misconduct consisted merely of immaterial matters dehors the facts, and this was after the verdict of the jury had been agreed upon, though before reduced to writing. This was an issue properly presented by the facts to the court, and he has resolved the matter against appellant. We are not disposed to grant appellant a new trial on this account.

There is no error in the record, and the judgment is affirmed.

*Affirmed.*