## Hattie Blount v. The State.

No. 520. Decided March 16, 1910.

### 1.—Murder—Charge of Court—Manslaughter.

Where, upon trial for murder, the evidence did not raise the issue of manslaughter there was no error in the court's failure to charge thereon.

### 2.—Same—Misconduct of Jury—Separation—Discretion of Court.

Where the question of the misconduct of the jury, set out in defendant's motion for new trial after a conviction of murder in the second degree, was tried by the court below who found adversely to the defendant's contention, and there was no abuse of discretion shown, there was no reversible error.

Appeal from the District Court of Angelina. Tried below before the Hon. James I. Perkins.

Appeal from a conviction of murder in the second degree; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, JUDGE.—This is an appeal from a conviction for murder in the second degree with a penalty of ten years in the penitentiary.

There are but two contentions in this case worthy to be noticed. One relates to the misconduct of the jury and the other to the omission of the court to charge upon the subject of manslaughter. The case was submitted to the jury on murder in the first and second degree and self-defense. It is very doubtful whether self-defense is in the case or not. It is true that the defendant proved threats had been made against her life by deceased. However, the testimony is wanting that deceased was doing anything at the time manifesting the intention of carrying the threats into execution. However, no complaint is made of the charge of the court other than the failure of the court to charge upon manslaughter. We do not think that the facts of the case called for a charge on manslaughter, and that the court would have been in error to have submitted the issue. On the 27th day of December, 1908, at a sawmill called Manning, the deceased was killed by appellant. The appellant had been the mistress of deceased and they had been living together up to about a week before the killing. The deceased quit living with appellant and went to another negro's house by the name of Cumbo and had been boarding there about a week; the deceased was living about a mile from where the killing occurred at a section house. On that Sunday evening Hattie Blount came into the house of Ellis DeWalt and asked Andrew Kirkland, who was in there, to lend her his pocketknife. Kirkland said he had no knife; there was a double-barrel shotgun lying on the bed; appellant picked it up and unbreeched it; Kirkland told her to put that gun down, it was loaded; she breeched the gun and remarked that was all right, or that was what she wanted. Kirkland holloed at her to put the gun down. The appellant ran out at the back door to a watercloset, some fifteen steps from the door. The road ran along by the closet and Fred Terry was coming up the road and Kirkland holloed and told him not to come on, that that gun was loaded; the appellant said stop; the deceased looked up and said, "What did you say?" Appellant threw the gun to her shoulder and fired and killed deceased. After the appellant fired the gun she ran off. At the time she shot she was in the path going facing Terry, who was coming on up the path. The witness spoke of defendant as being drunk on

that day. The appellant took the stand and testified as to the immediate killing; after going ahead and telling of being a cook for the deceased, and denying that they were living together as man and wife, and saying that the deceased was mad at her because she would not become his paramour, and that she went off and left him and he brought her back, she states that on the day of the shooting she went to Manning in the morning to the section house; that she intended to go back to the section house that evening; that she got a gun at Ellis DeWalt's, got it because she was scared of deceased because he had threatened to kill her; that she knew if she did meet him he would do something to her, and she says that when she met him deceased asked her where she was going, and she replied that she was fixing to ·go to the section house, and deceased told her that she was not going anywhere; that she replied, that she was going to the section house, and the deceased kept walking up toward her and she said, "Don't come on me," and that Andrew Kirkland holloed to him not to go up there and deceased said he did not give a dam, when appellant says, "What do you want?" and the deceased replied that if he got up to her ·and got that gun she would see, and that the deceased kept coming and she shot him. There is not a suggestion of manslaughter in this record and the court properly refused to submit the issue of manslaughter to the jury.

Appellant also complains of the misconduct of the jury in that one of the jurors, Woods, when on the jury had stated to the jury that negroes were not entitled to a fair trial, as they were brutes and not human beings. The issue was formed upon this question and was tried by the court. Woods denied making the statement; other jurors said they never heard any such statement; the court heard all the testimony and it was an issue of fact to be tried by the court, and the court found adversely to the appellant, and we do not feel that we would be authorized to disturb the finding of the court below upon an issue of fact tried by him.

Finding no error in the record that would justify a reversal, the judgment is in all things affirmed.

*Affirmed.*