J. E. AND W. R. WATSON v. THE STATE.

No. 4622. Decided November 21, 1917.

1.—Forgery—Evidence—Collateral Offenses—Bill of Exceptions.

Where appellant complained of evidence as to alleged collateral forgery because defendants had not been connected therewith, but the record on appeal

showed that there was evidence from which the jury was authorized to form a conclusion that the various instruments mentioned above were in possession of the defendants, in connection with the note upon which the prosecution was founded and that they were all put to a common use, and the court limited such testimony properly, there was no reversible error; besides, the bill of exception was defective. Following Ham v. State, 4 Texas Crim. App., and other cases.

**2.—Same—Misconduct of Jury—Allusion to Defendant's Failure to Testify.**

Where, upon trial of forgery, the evidence before the court was such that the comment by the jurors upon defendant's failure to testify was controverted, and the court found that there was no such misconduct and that no inhibited misuse of said defendant's failure to testify entered into or affected the verdict, there was no reversible error.

**3.—Same—Separation of Jury—Practice on Appeal.**

Where it was affirmatively shown that in a casual separation of the jury there was no influence brought to bear upon them in consequence thereof, and no opportunity given, and that such separation did not effect the verdict or impartiality of the trial, there was no reversible error. Following Robinson v. State, 58 Texas Crim. Rep., 550, and other cases.

**4.—Same—Misconduct of Jury—Evidence De Hors the Record.**

Where the contention of the receipt of other testimony reflecting upon the character of defendant was disproved, there was no reversible error.

**5.—Same—Misconduct of Jury—Retraction—Public Policy.**

It is contrary to public policy to permit a juror in attacking a verdict to testify that he retracted his acquiesence therein. Besides, this matter was controverted and there was no error in overruling the motion for new trial upon this ground. Following Turner v. State, 61 Texas Crim. Rep., 97.

**6.—Same—Sufficiency of the Evidence—Insufficiency of the Evidence— Practice on Appeal—Handwriting.**

Where, upon trial of forgery of two defendants, there was evidence that one of the defendants committed the alleged forgery, and this was not dependent on comparison of handwriting, but upon direct testimony, the evidence was sufficient to sustain a conviction as against him, but the evidence being insufficient to support the conviction of the other defendant, the judgment is reversed and the cause remanded as to him. Following Hughes v. State, 59 Texas Crim. Rep., 294.

Appeal from the District Court of Freestone; tried below before the Hon. A. M. Blackmon.

Appeal from a conviction of forgery; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Boyd & Bell* and *Gepper & Wroe*, for appellant.—On question of misconduct of jury: McCampbell v. State, 40 S. W. Rep., 496; Riggins v. State, 60 id., 877; Yancy v. State, 87 id., 693; Otto v. State, 87 id., 698; Rice v. State, 52 Texas Crim. Rep., 359, 107 S. W. Rep., 832; Ogle v. State, 63 S. W. Rep., 1009.

On question of collateral forgery: Williams v. State, 41 S. W. Rep., 645; Joiner v. State, 80 id., 531; Hinson v. State, 51 Texas Crim.

Rep., 102, 100 S. W. Rep., 939; Horn v. State, 68 Texas Crim. Rep., 89, 150 S. W. Rep., 948.

Upon insufficiency of the evidence against the defendant, W. R. Watson: Willis v. State, 15 Texas Crim. Rep., 118; Hardin v. State, 13 id., 192; Newbury v. State, 32 Texas Crim. Rep., 145.

On question of misconduct of jury: Rice v. State, 52 Texas Crim. Rep., 359, 107 S. W. Rep., 832.

*E. B. Hendricks*, Assistant Attorney General, for the State.

MORROW, JUDGE.—Appellants were jointly indicted, tried and convicted of forgery. The instrument which they were charged with forging was a note for $151.25, dated Teague, Texas, August 20, 1916, payable to the Farmers and Merchants State Bank or order at Teague, Texas, signed "G. F. Stilwell." The note was on one of the printed forms of the Farmers and Merchants State Bank of Teague. C. S. Stilwell testified that he had been a customer of the bank but had ceased to do business with it about ninety days before it was taken over by the State department. He further said that he did not sign the note nor authorize anyone to sign the note for him. He said he did not know who signed it. The signature did not look like his and that he had never been requested to pay it.

A witness named John Bagett testified to his acquaintance with appellants and that they were connected with the bank mentioned, and that he had worked for them five years prior to June, 1916; that J. E. Watson was active vice-president and W. R. Watson was cashier. He testified that he was familiar with their handwriting, and said: "I think J. E. Watson wrote the body of this note, and the figures seem to be in his handwriting, the serial number." He said the handwriting on the note resembled J. E. Watson's handwriting; that he was not positive who wrote it but that it was shaded like J. E. Watson wrote; and that was about all that resembled his handwriting; that the note had no revenue stamp on it, and that he thought that all notes that were used as assets of the bank had revenue stamps on them.

Another witness, Chancelor, testified that he had worked in the bank; knew appellants and was familiar with their handwriting, and that J. E. Watson wrote the "$151.25" and the "8/20," and it looked like he wrote the name of "G. S. Stillwell"; that all the writing on the note was written by the same party; that all the Watsons made loans and took notes for the bank when he worked there in 1911. Cross-examined, he stated: "Yes, sir; I think J. E. Watson wrote the note but I didn't see him do it." That the note had been shown him before and that he had formed the opinion that J. E. Watson wrote it, and that that was his opinion when he took the stand. He said: "I am not uncertain about who wrote the name 'Stilwell,' but we will all hesitate. I did not have an opinion as to who wrote the note before I saw it."

J. D. Moore testified that he was appointed receiver of the Farmers

and Merchants Bank of Teague on the 29th of August, 1916, and that the note in question, and several other notes mentioned by him, were turned over to him as such receiver; that the notes mentioned, including the one in question, when turned over to him were listed separately from the other assets of the bank, and that taking these notes into consideration there were more assets than necessary to balance the books. Other witnesses testified that the Stilwell note, the one in question, was among the assets of the bank, and Bank Examiner McKinnon testified that he had examined the bank on various occasions and that the appellants had assisted him in going over the assets when he requested them to do so; that he had talked to them all with reference to the notes; that he examined the bank in May, 1916, and that he had discussed with them various notes, including some of the notes described in the list which Receiver Moore identified; that he was not certain that he talked to W. R. Watson about these particular notes. Another witness testified that he was present when McKinnon went over the notes described by him with appellant J. E. Watson. Several witnesses were introduced who testified that the notes mentioned by Moore, receiver, as in the list and which purported to bear the signature of the witnesses were never signed by them or under their authority. These witnesses declared that they had not been called upon to pay them. Several witnesses for the defendants testified that they were acquainted with the signature of J. E. and W. R. Watson and that in their opinion the signature to the Stilwell note was not written by either of them. They gave it as their opinion that part of the body of the note was written by J. E. Watson. There was some testimony that there was a package of notes kept on J. E. Watson's desk which were not used in balancing the books of the bank, and to the fact that the notes that were used for that purpose bore revenue stamps, and that the Stillwell note was without revenue stamp.

Appellant presents three bills of exception: First, relating to alleged misconduct of the jury; second, with reference to refusal to instruct a verdict for W. R. Watson; and the third, omitting the formal parts, is as follows: "Be it remembered that upon the trial of the above entitled and numbered cause, after the State had rested, the defendants, J. E. and W. R. Watson, filed and presented to the court the following motion: 'Now comes J. E. and W. R. Watson, defendants herein, and moves the court to exclude all the testimony introduced with reference to alleged collateral forgeries, because there has been no evidence introduced showing that either one of these defendants participated or was connected in any way with said alleged forgeries.' . . . The court, after considering the above motion, overruled same, and that the said defendants, J. E. and W. R. Watson, then and there excepted in open court, and now tenders this bill of exception and asks that the same be signed and filed as a part of the record in this cause. (Signed) Attorneys for defendants."

This bill of exceptions is quite meager. It fails to set out the evi-

dence which it complains of the failure of the court to exclude or to identify with certainty or show the connecting circumstances rendering it inadmissible. Mallory v. State, 37 Texas Crim. Rep., 482, 36 S. W. Rep., 750; Phillips v. State, 50 S. W. Rep., 378; Kyle v. State, 53 S. W. Rep., 846; C. C. P., art. 744, Vernon's Crim. Stats., vol. 2, p. 542, note 29, and cases cited. We infer that the other forgeries mentioned in the bill relate to the various notes that were described in the testimony of Moore, the receiver of the bank, as having been listed and turned over to him and those described by the witness McKinnon as having been discussed by him with the appellants in his examination of the affairs of the bank. Speaking of this discussion, he said: "We had all the notes of the bank up there and we discussed them; had them up one by one"; and in this connection he identified from recollection a number of the notes described in the list referred to by witness Moore with reference to which notes the purported makers gave testimony to the effect that they were not executed by them or by their authority. This testimony was properly limited in the court's charge, and if the question was properly raised we can not say that there was error in its admission. There was evidence from which the jury was authorized to form the conclusion that the various instruments mentioned were in possession of the defendants in connection with the note upon which the prosecution was founded and that they were all put to a common use, namely, to swell the apparent assets of the bank of which the appellants were the active officers. Ham v. State, 4 Texas Crim. App., 645; Mason v. State, 31 Texas Crim. App., 306; Mallory v. State, 37 Texas Crim. Rep., 482; Hennessy v. State, 23 Texas Crim. App., 340, and other cases cited in Branch's Ann. P. C., p. 864, sec. 1412.

There were allegations asserting there were comments upon defendants' failure to testify; that there was separation of the jury; that one of the jurors did not agree to the verdict; that there was evidence considered with reference to the character of appellants, not introduced on the trial. Three unsupporting affidavits were attached to the motion; one made by juror R. H. Red, one by juror Pyrtle Blount, and one by Eubanks, the officer in charge of the jury. Evidence was heard upon the motion, each of the twelve jurors and the officer mentioned testifying. The evidence relied on to show separation was the fact that the jurors occupied two rooms apparently in the courthouse, both of which were used for sleeping rooms, part of the jury sleeping in one and part in the other, which rooms seem to have been across the hall from each other and doors connecting them being open and the jurors throughout their deliberations used the entire apartment. Also upon the fact that after the verdict had been agreed upon, written and signed and Eubank, the officer in charge, requested to advise the judge, and while they were waiting for the judge to come to the courthouse, one of the jurors, Red, assuming that the transaction was complete, went down the stairway and encountered the officer Eubank, remarking in

effect, "We have played hell, we have written a verdict"; that the officer directed the juror to rejoin the others, which he did without contact or conversation with any other person or without any further conversation with the officer. The separation of a jury after it is empaneled and sworn to try a felony case is prohibited by statute, article 745, Code of Criminal Procedure. Passing upon circumstances similar to those detailed, it has frequently been held by this court that a reversal would not result where it was shown affirmatively that there was no influence brought to bear upon the jury in consequence of the circumstance and no opportunity therefor. The purpose of the statute is to preserve the purity of the verdict, and where it is shown that a temporary separation of one of the jurors from his fellows did not and could not have affected the verdict or impartiality of the trial a reversal is not required nor authorized. Robinson v. State, 58 Texas Crim. Rep., 550; Watson v. State, 52 Texas Crim. Rep., 85; Wakefield v. State, 41 Texas, 556; Jones v. State, 13 Texas, 168; Jack v. State, 26 Texas, 1; Barnes v. State, 61 Texas Crim. Rep., 37; Galan v. State, 68 Texas Crim. Rep., 200, 150 S. W. Rep., 1171; Webb v. State, 69 Texas Crim. Rep., 413, 154 S. W. Rep., 1013; Guerrero v. State, 75 Texas Crim. Rep., 558, 171 S. W. Rep., 731; Lounder v. State, 46 Texas Crim. Rep., 121; Powell v. State, 49 Texas Crim. Rep., 473; Branch's Ann. P. C., p. 299, and cases cited; Vernon's Ann. P. C., p. 562, and cases cited.

The receipt of other testimony reflecting upon the character of the appellants was disproved; in fact, there was no evidence supporting it.

The intimation that the juror Red, after agreeing to the verdict, desired to retract his acquiescence was a contested issue and one upon which the court would not have been unauthorized to have found against the appellants. It is an inquiry, however, that we think could not legitimately be made. It is a character of impeachment of the verdict which is contrary to public policy. Turner v. State, 1 Texas Crim. App., 97. The juror Red claimed that he consented to the verdict believing the appellants were not guilty; that he told the foreman he desired to change his verdict; that the foreman told him he could not do so. This, as above stated, was controverted in substance, the foreman claiming that what occurred about it was in a joking manner, the juror Red remarking while they were waiting for the judge, that if he didn't come pretty soon he would take it back. Red said, however, that when inquired of by the court that he acquiesced in it for the reason that he wanted to go home. Similar facts were passed upon against appellant's contention in Bacon v. State, 61 Texas Crim. Rep., 206, and in Pilot v. State, 38 Texas Crim. Rep., 515, and the principle controlling these cases is affirmed in Henry v. State, 43 S. W. Rep., 340; Montgomery v. State, 13 Texas Crim. App., 74; Johnson v. State, 27 Texas, 758.

On the question of alleged comment upon appellants' failure to testify, it was claimed that such comment was made by the juror Bert McLellan and others not named. McLellan denied any such comment.

The juror Red claimed that during the deliberations and before the verdict, the juror McLellan remarked that if the defendants were not guilty they would have taken the stand. Most of the jurors testified that no reference to the appellants' failure to testify was made in their presence. One juror besides Red claimed that he heard McLellan make the remark attributed to him, and one or two other jurors thought there was some reference to the fact that the appellants did not take the witness stand. The statute, article 790, Code of Criminal Procedure, uses the following language: "The failure of any defendant to testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented upon by counsel in the cause." It has often been held to be the duty of the court to protect an accused against the use of his silence at a trial as a circumstance against him; and in compliance with this duty it has often been necessary to order a new trial. Where a defendant on trial fails to testify it is a fact always known to the jury and in recognition of this, this court has drawn a distinction between the mere reference to the failure to testify and the consideration of it as a circumstance against him. Leslie v. State, 49 S. W. Rep., 73; Jenkins v. State, 49 Texas Crim. Rep., 461; Johnson v. State, 53 Texas Crim. Rep., 339; Veach v. State, 159 S. W. Rep., 1069; Mason v. State, 81 S. W. Rep., 718, and other cases listed on the subject in Branch's Ann. P. C., p. 293. The cases in which reversals have been ordered on this ground have been those in which the discussion or comment upon the prisoner's failure to testify, and its use as a circumstance against him has been uncontroverted as in Tate v. State, 38 Texas Crim. Rep., 261, and other cases listed in Branch's Ann. P. C., p. 292, sec. 569; or in cases where such comment and use have been established by evidence so cogent as to impel this court to annul the finding of the trial court to the contrary. When the allegations in the motion for new trial, charging that the jury misused the accused's failure to testify to his prejudice are controverted, and on investigation and conflicting evidence determined against him, the finding of the court is given the weight attaching to any other question of fact submitted for judicial determination. Shaw v. State, 32 Texas Crim. Rep., 155; Adams v. State, 48 Texas Crim. Rep., 452; Sheffield v. State, 48 Texas Crim. Rep., 481; Douglas v. State, 58 Texas Crim Rep., 122; Blount v. State, 58 Texas Crim. Rep., 509, and other cases listed in Branch's Ann. P. C., p. 295, sec. 574, 3rd subdivision.

In the instant case the inquiry upon the controverted issue as to the misconduct of the jury was full; and while in some particulars conflict was developed as to whether there was any reference to the failure of the appellants to testify, the finding that there was none is supported; and further, the conclusion of the court that no inhibited misuse of the defendants' failure to testify entered into or affected the verdict is established.

On the issue as to whether J. E. Watson wrote the alleged forged note or wrote the purported signature of Stillwell thereto, there was a

conflict of evidence. This evidence consisted mainly in the testimony of witnesses claiming to know his signature. It was not a case depending upon the comparison of handwriting coming within article 714, Code of Criminal Procedure, prescribing the quantum of proof where the signature was denied under oath; but upon direct testimony of those claiming to have personal knowledge of the handwriting, such as was used in Hughes v. State, 59 Texas Crim. Rep., 294, and other cases on the subject cited in Jackson v. State, 193 S. W. Rep., 301. There was evidence of possession of the instrument by the appellant and his use of same bringing him into close proximity with the alleged forged note. Gaut v. State, 49 Texas Crim. Rep., 493; Wharton's Crim. Law,. sec. 931; Fischl v. State, 54 Texas Crim. Rep., 55. There was a serial number on the note, No. 3822, and evidence indicating that this number 'was a part of the system of the bank of which appellants were officers and managers in dealing with its bills receivable. The only direct evidence as to the execution of the instrument which we find in the record against W. R. Watson is some evidence that this serial number was in his handwriting. It is true that there were some circumstances such as his connection with the bank, his joint possession of this and other notes referred to above, claimed to have been spurious. and used to swell the bank's assets, but we regard the circumstances insufficient to support the conviction of W. R. Watson. On the other hand, we think that the State's evidence that appellant J. E. Watson wrote the alleged forged signature, in connection with the other facts testified to on behalf of the State, are sufficient to establish his guilt, and this being true the verdict of the jury against him is conclusive in the absence of errors in the trial, and none having been pointed out, the judgment of the lower court as to J. E. Watson is affirmed and that as to W. R. Watson is reversed and remanded.

*Affirmed as to J. E. Watson and reversed and remanded as to*
*W. R. Watson.*

[This case reached Reporter December, 1917.]