## JOHN BROWN v. THE STATE.

### No. 2479. Decided November 20, 1901.

**1.—Bill of Exceptions to Admitted Evidence—Sufficiency of.**

A bill of exceptions to admitted evidence should state all the conditions surrounding the admitted testimony, so as to show that the court acted improperly in admitting it; and unless it does so the bill is insufficient.

**2.—Murder—Evidence—Threats.**

On a trial for murder, where it appeared from the evidence that a short time prior to the homicide a brother of deceased's wife, and also a relative of defendant, had a difficulty with deceased and wanted to get a gun from defendant evidently to use upon deceased, when defendant refused to let him have the gun saying that he "would fix him;" Held, the threat was properly admitted in evidence, since it had direct reference to deceased.

**3.—Same—Bill of Exceptions to Excluded Evidence of Declarations by Defendant.**

A bill of exceptions to the exclusion of declarations by defendant a half hour after the killing, and after he had gone half a mile from the scene of the killing, is not sufficient where it did not show in itself all the circumstances that transpired from the time of the homicide until the declarations were made.

**4.—Murder—Allegations as to Means Used—Variance.**

Where the indictment for murder alleged that it was committed with a "Winchester rifle," and the proof showed that it was done with a "Colt's rifle,"

Held, no variance, the rule being that if the instrument alleged and the one proven are of the same nature and produce wounds of a similar character and capable) of producing death after the same manner, there is no variance.

Appeal from the District Court of Smith. Tried below before Hon. Gordon Russell.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

Appellant was charged by the indictment with the murder of Houston Mayfield, on the first day of August, 1901, by shooting him with a Winchester rifle.

The opinion gives a concise statement of the essential facts attendant upon the killing.

*W. H. Hanson* and *N. A. Gentry,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for fifteen years; hence this appeal.

Appellant objected to the introduction by the State of the following testimony from the witness Isom Pittman, to wit: "That on the night of the homicide I heard John Brown (defendant) and Nim Brown have a conversation, in which conversation Nim Brown said to John Brown, 'Let me have the gun; I will kill any son of a bitch that tries to run over my sister,' and John Brown refused to let him have the gun. John Brown said to Nim, 'I will fix him.'" Appellant objected to this testimony on the ground that it was too general and indefinite; that it was irrelevant, and did not connect the threats with deceased, Houston Mayfield, in any manner whatever; that the witness did not know who they were talking about, etc. With reference to this bill of exceptions, we would observe it has been repeatedly held that a bill should state all the conditions surrounding the admitted testimony, so as to show that the court acted improperly in admitting it. McGlasson v. State, 38 Texas Crim. Rep., 351; Cline v. State, 34 Texas Crim. Rep., 347; Buchanan v. State, 24 Texas Crim. App., 195. The judge must certify to the truth of the facts stated. A certificate of the judge to the effect that certain objections were urged to the testimony will not be considered sufficient. Cline v. State, supra. Testing this bill of exceptions by the rule laid down in the above cases, it will be seen it is not shown by the bill that this was all the testimony showing, or tending to show, the pertinency and relevancy of said evidence. If this bill had shown that it contained all the testimony connecting the declaration of John Brown with deceased, then it would have shown the inadmissibility of said testimony, and have pointed out the error of the court. If we are permitted to recur to the statement of facts, it will be seen that said bill does not embrace all the testimony showing, or tending to show,

the allusion of John Brown to deceased. The record furnishes testimony showing that the parties were at a festival or dance; that deceased's wife was there; that a little while before the homicide deceased had requested his wife to go home, and endeavored to make her go, and in that connection appellant remarked that, if deceased's wife did not want to go home, she need not go. A short time prior to the homicide Nim Brown, who was a brother of deceased's wife and also related to John Brown, had a difficulty with deceased, and they were separated. After this Nim Brown wanted to get the gun from John Brown, evidently to use it on deceased, Mayfield, and it was then John Brown said to Nim that he would fix him. Clearly, when viewed in the light of the statement of facts bearing upon this issue, the testimony which was admitted had direct reference to the deceased, and comes within the rule recognized by the text books and authorities in this State. Strange v. State, 38 Texas Crim. Rep., 280; Godwin v. State, 38 Texas Crim. Rep., 466; Holley v. State, 39 Texas Crim. Rep., 301; Gaines v. State (Texas Crim. App.), 53 S. W. Rep., 623.

Appellant offered to prove by several witnesses that they saw John Brown (defendant) after he had gone about half a mile, to his home, after the killing of Houston Mayfield, and about a half hour after the killing; that they called him to the gate at his house, and asked him if he had done the shooting, and that he said he had done the shooting, and then inquired if he hit anyone. They told him he did and he replied if he hit anyone it was an accident, that he was shooting to scare them. This was the first thing he said when he came to the fence. There was not anything said after he got to the fence. He did not deny he fired the gun, but insisted if he hit anyone it was an accident and he was sorry for it. This was objected to by the State, and excluded by the court. Appellant claimed it was admissible, because it was a part of the res gestae. The court excluded it on the ground that it was not a part of the res gestae, it being too remote. The same observations may be made with reference to this bill as were made in regard to the preceding; that is, the bill should show in itself all the circumstances that transpired from the time of the homicide until the declaration was made, so that it could be seen whether or not the court erred in excluding it. The only circumstances here stated are that the declaration was made after defendant had gone about half a mile from the scene of the homicide, to his home, and that it was about a half hour after the killing. It is not shown that he did not have his attention engaged with other matters in the meantime, or what he did. For aught that appears, he may have engaged in various conversations, not only about other matters, but in regard to the difficulty. If we recur to the statement of facts, it appears that appellant made substantially the same declaration at the scene of the homicide and immediately thereafter which is attributed to him at his house a half a mile distant and a half hour afterwards. And this declaration was properly admitted by the court as a part of the res gestae. In the shape in which this bill is pre-

sented, it is not necessary to discuss whether or not appellant could introduce repeated declarations of his own to the same effect, made both at the time and afterwards, and claim they were res gestae.

Appellant strenuously insists there is a variance between the allegations in the indictment as to the means of killing and the proof, to wit, that the indictment alleged appellant committed the homicide by shooting deceased with a "Winchester rifle," whereas the proof shows it was done with a "Colt's rifle," and he asked a charge based on this alleged variance, which the court refused. This action of the court is assigned as error. A reference to the statement of facts shows that a number of the witnesses describe the gun as a Winchester rifle. A gun was produced and identified during the trial as the one with which the homicide was committed, and this was shown to be a No. 38 caliber Colt's rifle. Hamilton, a witness for defendant, testified that he was a gunsmith, and was an expert as to guns; that "a Colt's rifle is a different gun from a Wincester rifle; a Winchester works with a lever just under the lock; a Colt's works with a slide; the Colt's is a pretty hard shooting gun, and would ordinarily shoot through a man forty or fifty yards away; the Colt's people have a patent on their guns, and the Winchester people have a patent on their guns; they are of different makes; they shoot with about the same accuracy and about the same force; you can use the same cartridges in these guns; both the Winchester and the Colt's rifle have magazines just under the barrel, holding the same number of cartridges, and the only difference in them is the Colt throws the cartridges into the barrel by working a slide under the barrel and the Winchester by working a lever; a wound made with a Winchester rifle could not be told from a wound made with a Colt, if each were of the same caliber; each are about the same length, and weigh about the same; both are rifles; they shoot cartridges, and each are fired by powder and use leaden balls." Appellant cites us to a number of authorities in support of his contention that there was a variance between the allegation in the indictment descriptive of the gun used and that proven. The majority of these cases are thefts, and the subject matter of the theft was set forth in the indictment, and there was a variance between that and the proof. But the principle applied in those cases is of general application, where the averment is descriptive of the offense. In murder cases, however, great latitude is allowed in the description of the instrument with which the person was killed. For instance, the general doctrine laid down by all the elementary writers is, if the instrument alleged in the indictment and the one proven to have been used are of the same nature and produce wounds of a similar character, there is no variance, but where they are of an opposite nature and character the contrary. Thus evidence of a dagger will support the averment of a knife, but evidence of a knife will not support the evidence of a pistol. The averment that death was caused by shooting with a gun will be supported by evidence that death was caused by the infliction of a wound caused by the shooting of any firearm. Whart. Hom., sec.

810; Bish. New Crim. Proc., 488, subdiv. 2. In this State the indictment for murder must state the means used in committing it. State v. Williams, 36 Texas, 352; Drye v. State, 14 Texas Crim. App., 191. But we follow the received doctrine authorizing latitude in the proof of the averment as to the means used. Douglass v. State, 26 Texas Crim. App., 109. That was a case of assault with intent to murder, and the indictment alleged that the assault was committed with a gun, and the proof showed it was done with a pistol. The court held the proof admissible, quoting from Mr. Bishop as follows: "This is one of the cases in which proof of only the substance of the issue is required. Though at the trial the weapon appears not to have been the same as charged, yet to have produced the same sort of death, the averment is sustained." 2 Bish. Crim. Proc., sec. 514. All the authorities accessible show that though, accurately speaking, the weapon used was different from the one described and set out in the indictment, yet if it was of the same general character, and produced the same character of wound, there was no variance. In People v. Colt, 3 Hill, 432, where the allegation in the indictment was in one count that death was produced by striking and cutting deceased with a hatchet, and another count charged it to have been committed by striking and cutting him with a certain instrument to the jurors unknown, and the proof showed death to have been caused by the discharge of a pistol, it was said there was no variance. The court used this language: "It presented, at most, a question of mere variance as to the name or kind of instrument used, which the modern cases, whatever may be said of the older ones, do not regard as material,"—citing a number of authorities. And see Rex v. Culkin, 5 Car. & P., 121. In Carter v. State, 2 Indiana, 617, a homicide alleged to have been committed by poisoning, it is held that "the indictment need not name the particular poison administered, but, if it had, it would not have been necessary that the proof should correspond." 3 Chit. Crim. Law, 734; 2 Bish. New Crim. Law, sec. 555. Now, if it be true that, under the allegation in the indictment that the homicide was committed with a gun, it can be shown to have been done with a pistol or any other firearm producing a like wound, or if the allegation in the indictment is that the homicide was committed by stabbing with a knife, and it can be shown to have been done with a sword or dagger, on the rule that great latitude is allowed in the proof of the instrument alleged, and that there will be no variance if the two weapons produce the same sort of wound, then what difference would it make if the pleader, in alleging the gun, describe it as a Winchester rifle, and the proof showed it was a Colt's rifle, when the proof further showed that these were both firearms capable of producing death after the same manner? The evidence here showed that the rifles were nearly similar in make, the only dissimilarity being in the movement. They carried the same caliber of bullet, and produced the same kind of wound. We accordingly hold there was no variance, the same strictness of proof not being required in an indict-

ment charging murder, as to the instrument with which it was done, as in cases of theft, forgery, and the like kind, where the subject-matter of the offense is attempted to be set out in the indictment.

We have carefully examined the record, and find no error therein. The judgment is accordingly affirmed.

*Affirmed.*

[Note.—Appellant's motion for rehearing was overruled without a written opinion.—Reporter.]

