### BEN DOUGLAS v. THE STATE.

#### No. 318. Decided January 26, 1910.

**1.—Murder—Evidence—Husband and Wife—Judgment—Divorce—Bill of Exceptions—Practice on Appeal.**

Where upon trial for murder the defendant objected to the testimony of his divorced wife on the ground that the judgment or divorce was a nullity for want of sufficient service on the defendant, and therefore the witness disqualified from testifying against him; but the court's explanation to defendant's bill of exceptions stated that the court did not certify to the truth of the grounds of objection but only that they were urged, the same could not be considered on appeal, as the explanation controlled the bill, and the court could not look to the statement of facts.

**2.—Same—Judgment—Collateral Attack—Waiver of Service.**

A judgment of a court of competent jurisdiction can not be collaterally attacked unless the record affirmatively shows a lack of jurisdiction; and where it was not made to appear when the waiver of citation was filed in the court, upon which said waiver the judgment of divorce was based, it will be assumed in the absence of anything to the contrary that the court rendering said judgment had jurisdiction to enter the decree of divorce.

**3.—Same—Query—Parol Evidence.**

It may well be doubted whether in any case, where a judgment is sought to be collaterally attacked for want of service, that its invalidity may be shown by parol.

**4.—Same—Misconduct of Jury—Discretion of Court.**

Where upon trial for murder, the defendant in his motion for new trial set up certain statements alleged to have been made by one of the jurors to the jury in their retirement, and it appeared that the trial judge heard testimony pro and con as to such statement and the influence it may have had on the verdict, and thereafter overruled the motion, and there was no abuse of discretion shown, there was no reversible error. Following Holt v. State, 51 Texas Crim. Rep., 15, and other cases.

**5.—Same—Evidence—Dying Declarations.**

Where upon trial for murder the written statement of the deceased was admitted in evidence as a dying declaration, and it appeared upon appeal from the record that the necessary predicate for this testimony had been laid, there was no error. Following Morgan v. State, 54 Texas Crim. Rep., 542.

**6.—Same—Sufficiency of the Evidence.**

Where upon trial for murder the evidence supported the verdict of murder in the second degree, the same will not be disturbed on appeal.

Appeal from the District Court of Erath. Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of murder in the second degree; penalty, forty-one years imprisonment in the penitentiary.

The opinion states the case.

*L. N. Frank* and *Robert L. Thompson,* for appellant.—As to question of waiver of service and invalidity of judgment: cases cited in opinion.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was convicted on a charge of murder in the District Court of Erath County, on July 12, 1909, the jury fixing the grade of murder as murder in the second degree and assessing his punishment at confinement in the penitentiary for a period of forty-one years.

The appeal in the case raises some very interesting and novel questions and in view of the penalty as well as character of the questions raised in the record we shall treat the case at more length perhaps than the difficulty of the questions presented by the record might ordinarily seem to require. All the parties were negroes. The evidence shows that one Vina Phillips, who was the wife of deceased at the time he was killed, had for some years theretofore been the wife of appellant. The deceased, Jim Phillips, had also been married before. The record tends to show that about January 31, 1909, Vina Phillips, secured in the District Court of Erath County, a divorce from appellant, and that some two or three days after that the deceased, Jim Phillips, secured a divorce from his then wife, and that Jim Phillips and Vina, a short time thereafter, married and for some little time before the difficulty with the knowledge of appellant were living together as husband and wife and seem in good faith to have occupied that relation, and that for some considerable time appellant not only manifested no resentment or expressed any disappointment over their relations, but his attitude was one of friendliness. The testimony of the State is to the effect in substance that on the day of the homicide and late in the afternoon while Phillips and his wife were returning from the house of one Lee Means, appellant armed with a pistol, without excuse or provocation, shot Phillips, inflicting a mortal wound upon him, continuing to fire upon him until he had fired some four or five shots, pursued deceased into the bushes and repeatedly stabbed him with a knife, during all of which time deceased was calling for help, imploring appellant not to kill him and saying to him that he could have the woman. Appellant presents by his testimony a case

of self-defense which, however, as we view the record, was neither satisfactory nor reasonable. This matter, as well as all the issues in the case, the court submitted to the jury. That this charge, neither in matters contained in it or omitted therefrom, is not in any respect the subject of complaint is the strongest demonstration of its accuracy. There is no complaint that the court misdirected the jury in any matter, or that he failed to submit any issue to the jury raised in the evidence. All the questions presented relate to other matters which we will now examine.

1. When the witness, Vina Phillips, was sworn and her testimony was offered, appellant objected to her testifying in the case and urged that she was disqualified by law from so doing. The bill of exceptions touching this matter, thereupon proceeds as follows: "Defendant by his counsel at the time objected to any and all testimony that might be given by said witness in the case, and showed to the court that at the time of the alleged killing of deceased, Jim Phillips, said witness Vina was in law and in fact the wife of defendant, Ben Douglas, and that said witness is now in law and in fact the wife of defendant, Ben, Douglas, and that therefore said witness is incompetent to testify against the defendant herein. Defendant showed to the court, on said objection, that the alleged judgment and decree of divorce between the said Vina and defendant was and is a nullity and void, and of no force or effect in law in this: That in the proceedings in which said alleged divorce judgment was granted by this court the petition of the said Vina Douglas was filed in this court on the 31st day of January, 1909, and that no citation was ever issued or served on the defendant therein, the said Ben Douglas, but that a waiver of citation, signed by said defendant, Ben Douglas, at least three days prior to said 31st day of January, 1909, was filed in said cause on said 31st day of January, 1909, the same being executed by the defendant at least three days before the filing of said petition and the judgment of divorce thereon, and the defendant says that no judgment of divorce could have been rendered thereon having any force or effect in law, and that same was null and void, and that, therefore, the witness Vina is incompetent in law to testify against the defendant in this case, she being his wife at this time." The bill is allowed with the following qualification: "That the court does not certify to the truth of the grounds of objection, but only that they were urged." It has been held by this court and seems to be the settled law that the qualification or explanation of the court appended to a bill of exceptions will control the recitals in the bill insofar as such explanation modifies same. Hardy v. State, 31 Texas Crim. Rep., 289. And that where counsel accepts a bill of exceptions with the qualification of the judge indorsed thereon and files the same he estops himself from claiming it to be unfair and injurious to his case. Jones v. State, 33 Texas Cr. Rep., 7. It is also the settled rule of practice in this State that the mere statement of a ground of objection in the bill is not the certificate of the judge that

the fact stated is true. Fuller v. State, 50 Texas Crim. Rep., 14; Bigham v. State, 36 Texas Crim. Rep., 453; Hamlin v. State, 39 Texas Cr. Rep., 579; McKinney v. State, 41 Texas Cr. Rep., 434; Burt v. State, 38 Texas Cr. Rep., 397, and Benson v. State, 69 S. W. Rep., 165. It seems also to be the settled rule of law in this State that a bill of exceptions can not be aided either by statements in reply to a motion for new trial, nor by the statement of facts. McGlasson v. State, 38 Texas Crim., 351; Howerton v. State, 45 S. W. Rep., 1018; Cline v. State, 34 Texas Cr., 347; Gay v. Railroad, 30 S. W. Rep. (Tex. Sup.), 543; Buchanan v. State, 24 Texas Cr. App., 195; Smith v. State, 4 Texas Cr. App., 626; Hamlin v. State, 39 Texas Cr. Rep., 579; Edens v. State, 55 S. W. Rep., 815; McAnally v. State, 57 S. W. Rep., 832; Price v. State, 43 S. W. Rep., 96; Carter v. State, 40 Texas Cr. Rep., 225; Ogle v. State, 58 S. W. Rep., 1004; Diaz v. State, 53 S. W. Rep., 632; Hopkins v. State, 53 S. W. Rep., 619; Brown v. State, 43 Texas Crim. Rep., 243, 65 S. W. Rep., 529; Schweir v. State, 50 Texas Cr. Rep., 119. And further that the bill of exceptions controls even the statement of facts. Briscoe v. State, 27 Texas Crim. App., 193; Ezzell v. State, 29 Texas Crim. App., 521; Arcia v. State, 28 Texas Crim. App., 198. However, if the matter could be considered and the objections urged as a ground of disqualification of the witness could be assumed to be true, still we think the testimony shows that .the objections urged are not tenable. By the judgment of the District Court of Erath County, Vina Phillips and appellant had heretofore, by decree duly entered, been divorced. She and deceased had thereafter been married and were recognized and treated by appellant and by all the world as husband and wife. This in a sense fixed their status. To declare such relations to be adulterous and that the divorce theretofore obtained void in a collateral proceeding such as this is not to be done lightly or inconsiderately and can only be so treated if under the well settled principles of law no other judgment or conclusion is permitted. It is the settled law of this State that the judgment of a court of competent jurisdiction can not be collaterally attacked unless the record affirmatively shows lack of jurisdiction. Williams v. Haynes, 77 Texas, 283, and that a recital in a judgment of service of citation on a defendant involves absolute verity in a collateral proceeding. Finch v. Edmonson, 9 Texas 504; Mikeska v. Blum, 63 Texas, 44; Davis v. Robinson, 70 Texas, 394. Taken more strongly in favor of appellant, it appears from the matters stated in the bill that the waiver of citation was *signed* by him some three days prior to the date when the suit for divorce was filed. It is not made to appear when this waiver of citation was filed into court. We must and should assume that the court rendering the judgment would have made inquiry and satisfied himself that service on defendant had been obtained by the means provided by law or that proper waiver had been made and in the absence of anything to the contrary, where such fact is not in terms negatived, we would assume in aid of the jurisdiction

of the court below that if signed three days before the filing of the suit that the waiver of citation was filed by him or under his authority after the suit for divorce had been instituted. The cases cited by appellant are not in point. The case of McAnelly v. Ward, 72 Texas, 342, 12 S. W. Rep., 206, was a case where the regularity of the service was a matter of inquiry on appeal from a judgment theretofore rendered, and, of course, such being the case, the court was required to take cognizance of any irregularity in the matter of obtaining service or touching the filing of a waiver irregularly and not in accordance with the law. Nor, as we believe, does the case of O'Neal v. Clymer, 52 S. W. Rep., 619, support appellant's contention, but rather is an authority against him. In discussing that case, after quoting articles 1240, 1241, 1348, and 1349 of our Revised Civil Statutes, Judge Finley, speaking for the court, says: "The article last recited (article 1349) plainly prohibits the acceptance and waiver of service of citation and the agreement for judgment before the institution of the suit. This statutory prohibition rendered the agreement indorsed on the petition illegal and void, and it could not have the effect to give the court jurisdiction of the defendants in that suit. It being manifest *upon the face of the judgment that the court rendering it had no jurisdiction of the defendants in the suit, the judgment was unauthorized and void, and could not be the basis of a valid execution.*" In this case it does not affirmatively appear from the judgment itself that same is invalid. The farthest that the proof goes is that the waiver was signed before the suit was filed. It may well be doubted whether in any case where a judgment is sought to be collaterally attacked for want of service, its invalidity may be shown by parol. This would indeed institute a dangerous doctrine.

2. The next question of importance presented as a ground for the motion is the supposed misconduct of the jury. This was based upon the allegation and claim that while the jury were deliberating upon the case, Mr. East, foreman of the jury, made in the presence and hearing of all the other jurors the following statement: "I have heard so much criticism of the juries of this county that I am getting tired of it, and think we should give him, the defendant, a stiff penalty. I have heard a great deal of criticism of the jury in the Baum case, and think that we should give this man a high penalty;" and that this was misconduct of the jury in that they were guided in making up their verdict by the popular sentiment of the community, and by referring to other cases heretofore tried in this court. It is further averred that a number of the jurors in the case were originally for a much lower penalty than that finally agreed upon and that by reason of the argument made by Mr. East and the criticism of the verdicts of juries theretofore, made in the court, and especially the criticism of the jury in the Baum case, this had the effect to influence the jury in this case to assess a much higher penalty against the defendant than they might otherwise have done had they not been threatened with public censure

if they should render a lower penalty, and that the effect of this misconduct of the jury was to greatly increase the punishment of the appellant and to increase same far above what many of the jurors thought the merits of the case required. In support of this ground of appellant's motion the court heard evidence from the jurors. One of the jurors, Joe Hughes, testified in substance that during their consultation in the juryroom he heard Mr. J. C. East say that he was tired of hearing jurors criticised for their low verdicts, and that he thought we should give a higher verdict in this case on that account, and he also stated that when this remark was made the jury had agreed on the grade of murder that the appellant was guilty of, but that the jurors were divided on the amount of punishment to be assessed, ranging all the way from thirty-four years to fifty years as a penalty against the defendant. This juror states that the remarks made by Mr. East did not have any influence upon him in arriving at his verdict and fixing the amount of the penalty against appellant; that he arrived at and rendered his verdict solely upon the charge of the court. This is the strongest evidence in the record in support of the motion. A number of jurors introduced say that they heard no such remark made by Mr. East or any other person as that testified to by Hughes. Others of them in a vague way say that something was said along that line, without being able to state just what it was. Appellant introduced only three of the jurors, Hughes, Williams and Palmer. Palmer expressly denied hearing any of the remarks testified to by Hughes or the other juror. Mr. East was produced by the State, who expressly and unequivocally denied making any remark of the kind attributed to him or any remark similar thereto, and he is supported by others of the jury introduced by the State, the remainder of whom, who were not theretofore introduced, were examined on behalf of the State. We have not infrequently held that matters of this sort are particularly cognizable by the trial court and unless the conclusion reached by the court on the hearing of same is clearly wrong and unsupported by the testimony, we ought not to and can not interfere. Benevidas v. State, 57 Texas Crim. Rep., 170, 121 S. W., 1107; Holt v. State, 51 Texas Cr. Rep., 15; Fox v. State, 53 Texas Crim. Rep., 150; Goodman v. State, 49 Texas Crim. Rep., 185; Mayes v. State, 33 Texas Crim. Rep., 33; Cockerell v. State, 32 Texas Crim. Rep., 585; Driver v. State, 37 Texas Crim. Rep., 160, and Shaw v. State, 32 Texas Crim. Rep., 155. In the light of the entire record we are not prepared to say and hold that the conclusion of the court before whom this matter was fully investigated, was wrong, and we would certainly be without warrant in concluding from this distance that it was so clearly wrong as to justify us in reversing and setting aside his judgment after hearing in person the evidence.

3. During the trial the State offered and was permitted to read in evidence a written statement made by deceased touching the circumstance of the assault upon him. This was offered as a dying declara-

tion. Its admission was strenuously objected to and this objection was based upon the ground therein stated that said written statement was not properly or sufficiently verified as the dying statement of said deceased. The court approves this bill of exceptions with this explanation: "Drs. Keith and McGaughey both testified on the predicate that they had told deceased he could not live. That he had bled profusely, and he stated that he was going to die. They also testified as to the nature of the wounds, deceased's throat being cut, and as to the shot wounds." It is also shown, if we may look to the statement of facts, that the admissibility of this testimony is rendered even clearer. It shows that he was much weakened by loss of blood; that his mind was clear; that the matter of making a statement in view of his approaching death was discussed; that he was advised of the impossibility of his recovery and in the light of all these suggestions dictated the statement which when reduced to writing, was thereafter read over to him, and with the knowledge of its contents he deliberately signed it. We had occasion in the case of Morgan v. State, 54 Texas Crim. Rep., 542, 113 S. W., 934, to consider and discuss at some length the subject of dying declarations. We there stated the rule to be as follows: "The rule is universal that, before dying declarations can be admitted in evidence it is essential, and is a preliminary fact to be proved by the party offering them in evidence, that they were made under a sense of impending death; but Mr. Greenleaf says (section 158) it is not necessary that they should be stated at the time to be so made. It is enough if it satisfactorily appears, in any mode, that they were made under that sanction, whether it be directly proved by the express language of the declarant, or be inferred from his evident danger, or the opinions of the medical or other attendants, stated to him, or from his conduct, or other circumstances of the case, all of which are resorted to, in order to ascertain the state of the declarant's mind." We have no doubt of the correctness of the rule there stated and that tested by such rule that the statement was admissible as a dying declaration.

4. There are some other questions raised in the record, but they relate to matters of mere practice and other questions not of a vital or important character. These we have carefully considered and have concluded there is no other error in any of them. The matters heretofore discussed are the serious questions raised in the appeal, and in view of the lengthy opinion we pretermit a discussion of the other matters. The evidence clearly supports the verdict and in view of the full and fair submission of the issues, and that there was no improper evidence admitted against him, we believe the judgment of conviction, serious and severe as it is, ought to be and must be affirmed, which is accordingly done.

*Affirmed.*

McCord, Judge, not sitting.