FRED ALBRECHT v. THE STATE.

No. 5175.   Decided May 7, 1919.

Rehearing denied June 25, 1919.

### 1.—Murder—Notice of Appeal—Practice on Appeal.

Where, upon appeal, the record disclosed that the same failed to show that any notice of appeal was entered of record in the minutes of the court below, the appeal must be dismissed. Following Young v. State, 60 Texas Crim. Rep., 209. However, where the defects in the record were thereafter remedied, the appeal is reinstated.

### 2.—Same—Evidence—Dying Declarations—Predicate.

Where, upon appeal from a conviction of murder, it appeared from the record that deceased was told by his medical attendant that he must die, that he sent for a minster who administered the dying sacraments; that the deceased was suffering intensely and was shot through the stomach; that he talked to his brother about his business and expressed commiseration for his wife and children, all of which indicated his consciousness of approaching death at the time of his statement that he was shot by the defendant, etc., the same was admissible in evidence as a dying declaration. Following Miller v. State, 27 Texas Crim. Rep., 63, and other cases.

### 3.—Same—Rule Stated—Dying Declarations.

In order to make a dying declaration admissible in evidence the deceased must not only be in a dying condition but he must actually believe that he is so. This may be inferred from the statement of the party and also from the nature of the wound and other circumstances. Following Krebs v. State, 3 Texas Crim. App., 348, and other cases.

### 4.—Same—Manslaughter—Charge of Court—Adequate Cause—Insulting Words.

Where, upon trial of murder, the court's charge on manslaughter applied the law to the facts in the case, and instructed the jury that insulting words or gestures were not adequate cause, there was no reversible error. Following: Wood v. State, 71 Texas Crim. Rep., 398, 159 S. W. Rep., 1183, and other cases; especially in the instant case, where defendant denied that such language of the deceased affected him in any way but that he acted in self-defense.

5.—Same—Self-Defense—Charge of Court—Requested Charge.

Where, upon trial of murder, the court gave a correct charge under the law of self-defense as applicable to the facts in the case, there was no error in the court's refusal to submit a requested charge as to defendant's right to act in his self-defense against any danger or apparent danger which theory was not raised by the evidence.

Appeal from the District Court of Victoria.   Tried below before the Hon. John M. Green.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Fly & Ragsdale,* for appellant.—On question of dying declaration: Ledbetter v. State, 23 Texas Crim. Rep., 247; Irby v. State, 25 id., 203; Meyers v. State, 33 Texas Crim. Rep., 204; Edmonson v. State, 41 Texas, 496; Craven v. State, 49 Texas Crim. Rep., 781; Phillips v. State, 50 id., 127.

On question of court's charge on self-defense; Cartwright v. State, 16 Texas Crim. App., 473; Beam v. State, 24 id., 11; Norris v. State, 42 Texas Crim. Rep., 559; Mayhew v. State, 65 Texas Crim. Rep., 290, 144 S. W. Rep., 229; Black v. State, 65 Texas Crim. Rep., 336, 145 S. W. Rep., 944.

On question of notice of appeal: Lewis v. State, 39 S. W. Rep., 370; Brannan v. State, 76 Texas Crim. Rep., 492, 175 S. W. Rep., 697.

On question of writ of *certiorari* and *nunc pro tunc* order: Clay v. State, 68 Texas Crim. Rep., 250, 150 S. W. Rep., 430; Bruce v. State, 76 Texas Crim. Rep., 72, 173 S. W. Rep., 301.

*F. B. Hendricks,* Assistant Attorney General, for the State.   On question of notice of appeal: Harkrider v. State, 48 Texas Crim. Rep., 573, and cases cited in the opinion.

On question of adequate cause: Davis v. State, 57 Texas Crim. Rep., 545; Washington v. State, 50 id., 356; Johnson v. State, 74 Texas Crim. Rep., 179, 167 S. W. Rep., 733; Wilson v. State, 71 Texas Crim. Rep., 399, 160 S. W. Rep., 83, and cases cited in the opinion.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Victoria County of the offense of murder and his punishmen fixed at five years in the penitentiary.

It is moved in this case by the Assistant Attorney General that the appeal be dismissed because it does not appear from the record that notice of appeal was given and entered in the minutes of the District Court, as required by statute.   An inspection of the transcript discloses that the same fails to show that any notice of ap-

peal was entered of record in the minutes of the court below. The authorities of this State are unanimous in holding that the statute requiring this to be done is imperative. Long v. State, 3 Texas Crim. App., 321; Solari v. State, 3 Texas Crim. App., 482; Johnson v. State, 8 Texas Crim. App., 671; Truss v. State, 38 Texas Crim. Rep., 291; Lenox v. State, 55 Texas Crm. Rep., 259; Thomas v. State, 56 Texas Crim. Rep., 246; Young v. State, 60 Texas Crim. Rep., 290; Rios v. State, 76 Texas Crim. Rep., 364, 174 S. W. Rep., 1050.

The appeal is dismissed.

*Dismissed.*

. ON REHEARING,

June 25, 1919.

LATTIMORE, JUDGE.—Defects in the record which caused the dismissal of this case at a former day of this term having been remedied the cause is now before us on its merits.

The appellant's first complaint is of alleged error in the admission of the declaration of deceased to Reverend Sievert. This was offered by the State as a dyng declaration. Deceased was shot about six or seven o'clock in the afternoon; the statement was made about ten o'clock that night and deceased died the next day. The only ground of objection, as stated in the bill of exceptions, is "because the State had not laid a proper predicate for the introduction of this testimony as to how the difficulty occurred so as to make it a dying declaration of the deceased." The statement so objected to, was as follows: "I was trying to keep the peace; Albrecht struck me; we went out; we looked in and I was shot."

The undisputed facts show that appellant shot deceased; that at the time of the shooting deceased and his brother had gone out of the saloon and had returned to, and were standing just outside the door cursing and abusing appellant who was standing behind his bar something like twelve feet away. As bearing on the predicate laid for the introduction of said statement. Dr. Hopkins testified that he was called to see deceased when he was shot, and that after examining him he stated to deceased that he could not stand to be taken home—that he might die on the way; that he had deceased taken to a hotel and after he had gotten him a little quiet he asked deceased if he wished to make any will, and deceased said no, that he would tell his brother about his business, and the witness Hopkins then informed deceased that if he had any business to attend to, do it now because his wound was fatal. Said witness further asked deceased if he wanted to send for a minister and

deceased answered yes, and Reverend Sievert was sent for and came. Apparently in answer to a direct question, the said physician testified: "At the time of the conversation with the minister he was conscious of the fact that he was going to die and the minister gave him the last sacrament on that account." During all this time the witness said that deceased was suffering intensely and was shot through the stomach. On cross-examination the said physician reiterated that he was firmly of opinion that deceased was conscious that he was going to die. A careful examination of the record discloses no statement on the part of the deceased at any time expressing any hope of recovery or doubt of the fact of his approaching dissolution. After making the statement to the minister, which is the subject of this objection, deceased presently said: "My poor wife and children."

We think the evidence admissible as a dying declaration. Sims v. State, 36 Texas Crim. Rep., 154; Morgan v. State, 54 Texas Crim. Rep., 542; Douglas v. State, 58 Texas Crim. Rep., 122. In the case of Miller v. Sate, 27 Texas Crim. App., 63, Judge Hurt, states the rule as follows: "The declarations must be made under a sense of impending death, but it is not necessary that they should be stated at the time to be so made. It is enough if it satisfactorily appears in any manner that they were made under that sanction; whether it be directly proved by the express language of the declarant, or be inferred from his evident danger, or the opinions of medical or other attendants stated to him, or from his conduct or other circumstances of the case—all of which are resorted to in order to ascertain the State of the declarant's mind. (1 Greenlf. Ev., 192)."

In the Krebs case, 3 Texas Crim. App., 348 it is said: "In order to make a dying declaration admissible in evidence, the deceased must not only be in a dying condition but he must actually believe that he is so. This may be inferred from the statement of the party, and also from the nature of the wound and other circumstances." In Hunnicutt v. State, 18 Texas Crim. App., 498, Judge White quotes with approval the following from Mr. Greenleaf: "Mr. Greenleaf thus announces the rule with regard to such declarations: 'It is essential to the admissibility of these declarations, and is a preliminary fact to be proved by the party offering them in evidence, that they were under a sense of impending death; but it is not necessary that they should be stated at the time to be so made. It is enough if it satisfactorily appears in any mode that they were made under that sanction; whether it be proved by the express language of the declarant, or be inferred from his evident danger, or the opinions of the medical or other attendants, stated to him, or from his conduct, or other cicumstances of the case, all of which are resorted to in order to ascertain the state of the declarant's mind.' "

We have examined the authorities cited by appellant and find nothing in any of them to justify us in holding that the statement should be excluded under any rule of law or any of the decisions of this court to which we are referred. The rule laid down by the authorities above mentioned and Mr. Greenleaf is fully met by the facts in the instant case. It appear therefrom that deceased was told by his medical attendant that he must die; also that he sent for the minister who administered the dying sacrament; also the character of his suffering and the nature of his wounds is detailed; it also appears that he talked with his brother about his business; and further the commisceration expressed for his wife and children, all these are matters which are regarded as sufficient to indicate his consciousness of approaching death at the time the statement was made.

We do not think the charge on manslaughter too restrictive of any substantial right of the appellant. The definition of adequate cause therein is as follows: "By the expression "adequate cause," is meant such as would commonly produce a degree of anger, rage, resentment or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection. The following is deemed adequate cause; an assault and battery by deceased on the person of the defendant, causing pain. Any condition or circumstance which is capable of creating and does create sudden passion, such as anger, rage, sudden resentment of terror, rendering the mind incapable of cool reflection, whether accompanied by bodily pain or not, is deemed adequate cause. And where there are several causes to arouse passion, although no one of them alone might constitute adequate cause, it is for you to determine whether or not all such causes combined might be sufficient to do so. Insulting words used by deceased towards defendant are not such adequate cause."

It is statutory that insulting words or gestures are not adequate cause. Vernon's C. C. P., Art. 1131 and authorities cited; Wood v. State, 71 Texas Crim. Rep., 398, 159 S. W. Rep., 1183; Wilson v. State, 71 Texas Crim. Rep., 399, 160 S. W. Rep., 83; Johnson v. State, 74 Texas Crim. Rep., 179, 167 S. W. Rep., 733.

Appellant took the stand in his own behalf and nowhere claimed that any language used by deceased or his brother affected him in any way or made him angry or that same caused him to fire and kill deceased. His statement on this point was as follows: "I shot Henry Kolle because I was trying to defend myself. From what I saw I thought he was going for his gun and that is why I shot him; I guess if Charley Kolle had made a play for his gun I would have shot him too." The proof showed that both the Kolles were standing together just outside the saloon of appellant, and that both of them were cursing and abusing him but

it was not claimed by the appellant, nor any of his, witnesses that Charley Kolle made any demonstration of any kind indicating any intent to attack appellant or to renew any difficulty after he. went out of the saloon. ' In this state of the record we fail to see how appellant can complain further of the charge on. manslaughter.

Nor do ' we think there is anything in the exception to the court's charge, or the requested special charge, submitting the question of appellant's right to defend himself against danger or apparent danger from an attack at the hands of both the Kolles. There had been a fight in the saloon participated in by a number of people. During said row Charley Kolle walked out of the door of the saloon calling to his brother Henry who was engaged in a fight with. Ed Maddox, the son-in-law of appellant, to come' on and go. The two Kolles then went together out to their car, which was in plain sight of appellant, and then said parties returned to the door of the saloon.  Appellant said he watched them go out to the car and saw them come back   When they returned to the door appellant was standing behind the bar with his pistol in his hand and had the same pointed over the bar toward the door.  Both Kolles stopped at the door and both of them cursed appellant and according to some of the witnesses dared him to shoot, and told him he did not have the nerve enough to shoot.  It was testified by the appellant that while the parties were in this position Henry Kolle threw his hand behind him and he thought he was going to get his gun and he shot Kolle.  It was not claimed by the appellant or Ed. Maddox, who was his bartender, son-in-law and witness, or by any one else, that Charley Kolle made any demonstration of any kind after going out of the saloon and in this condition of the record a charge authorizing appellant to act in his self-defense against any danger or apparent danger at the hands of Charley Kolle was wholly uncalled for. It is elementary that the court is not required to submit a theory of any case unless there is evidence in the record raising such issue.  Neither of the Kolles had any weapons or exhibited them at any time during the difficulty.

We have carefully reviewed the record and finding no reversible error therein, the motion for rehearing is overruled and the .judgment of the lower court is affirmed.   .:

*Affirmed.*