HUMPHREY HENDERSON v. THE STATE.

No. 17954. Delivered March 25, 1936.
State's Rehearing Granted December 16, 1936.
Appellant's Rehearing Denied June 16, 1937.

The opinion states the case.

*William E. Stone* and *Randolph Pierson,* both of Galveston, for appellant.

*Ralph Crawford,* County Attorney, and *Theodore R. Robinson,* First Assistant County Attorney, both of Galveston, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of murder and his punishment was assessed at death.

The record shows that in January, A. D. 1934, the appellant and the deceased were legally married to each other and lived together as husband and wife until some time in the month of May of said year, when they separated; that during the time they lived together and after their separation, up to the time of the fatal evening, they had frequent quarrels which at times resulted in personal combats. On the evening of March 6, A. D. 1935, appellant and deceased met on Avenue K in the city of Galveston where the alleged homicide occurred. The State's testimony differs materially from that offered by appellant as to the immediate cause of the difficulty between appellant and deceased.

The testimony adduced by the State shows that while the

deceased, accompanied by two other women, was walking along Avenue K the appellant overtook her and inquired of her why she had not done what he had asked her to do, to which she replied, "What?"; whereupon appellant took hold of her and began stabbing her with a knife from the effects of which she died a few minutes later. The appellant's version of the affair is that he was on his way to visit his mother; that he met the deceased and one Jewel Halson on Avenue K; that deceased asked, "How come you did not let me know you had done got out of the hospital?", to which he replied, "You didn't have to know it"; that she then asked where he was going and he said, "I am going out to Mamma's." Whereupon Jewel Halson said, "He is going to see his woman." After this remark, the deceased unrolled a handkerchief and took therefrom a black razor and began to cut at him. He ran back and she pursued him with the razor, cutting at him as she went. He suddenly turned, grabbed her, and began stabbing her to prevent her from cutting him. After he had stabbed her, she dropped the razor which was picked up and carried into the house by Jewel.

By bill of exception number one appellant complains of the testimony of Dr Williams concerning an injury to the hand of Florence Wright. The testimony should not have been admitted over the objection of appellant. However, the record shows that Florence Wright was permitted to testify to the same facts without objection. Under such circumstances the error was harmless. This court has held by an almost unbroken line of authorities that when testimony similar to that objected to has been admitted without objection, the objectionable testimony will not be cause for reversal. See Sparkman v. State, 82 S. W. (2d) 972; Enix v. State, 112 Texas Crim. Rep., 376; Pryor v. State, 225 S. W., 374.

The testimony of L. Kraus, a policeman, complained of in bill of exception number four showed that in the month of August of the preceding year, he was called to a drug store to quell a disturbance, that upon arrival at the drug store deceased informed him, in the presence of appellant, that appellant had threatened to kill her. This testimony was admissible to show ill-will and malice, but the balance of the testimony as to what he, the policeman, did and said was subject to an objection. However, the bill shows that appellant made a general objection which went to the entire testimony of said witness. The general rule is that when part of given testimony is admissible and part is not, the appellant is required to direct a specific objection to the inadmissible part thereof or

otherwise the objection will be of no avail. See Ghent v. State, 176 S. W., 566; Tubb v. State, 55 Texas Crim. Rep., 623.

The matter complained of in bill of exception number five seems to have been taken care of by the court as disclosed by his qualification to said bill.

The most serious question presented by appellant relates to the misconduct of the jury as disclosed by his motion for a new trial in which he contends that after the jury had retired and deliberated upon the case until eleven P. M. without having reached a verdict they went to town for a cup of coffee; that there they learned that a prison break had occurred at the Eastham state prison farm; that a guard had been killed and one Lutlow, a prisoner from Galveston County, together with several other long-term prisoners had escaped; that the jury misused this information to the prejudice of appellant.

The court upon a hearing of the motion also heard testimony of four jurors; two testifying at the instance of the appellant and two at the instance of the State. A. B. Crow, the first juror called, testified that about eleven P. M. and before they had agreed upon a verdict, they went to town for a cup of coffee; that while at the cafe they learned that a prison break had taken place that day at the Eastham state prison farm; that a guard was killed and that Lutlow with several other long term prisoners had escaped; that after they returned to the jury room and again began their deliberations Mr. Bleimeyer, the strongest contender for the death penalty said: "A man who instead of being given the death penalty is sent to the penitentiary for life frequently escapes or is liable to escape and for that reason the jury ought to give the death penalty rather than life imprisonment."

Harry Joyce testified that at the time they went to get a cup of coffee the jury stood seven for the death penalty and five for life imprisonment; that on their way back to the courthouse they passed a news stand and saw from the headlines in the newspapers that a prison break had occurred, a guard had been killed, and several long term prisoners had escaped; that after they again began their deliberations Bleimeyer said: "Why, you see what happened there today in the paper about breaking out of prison and shooting a guard. That is just exactly what will happen if we send this nigger to the penitentiary. He won't be up there over a year and he will be doing the same thing."

Mr. Robinson, being called by the State, testified: "On our way back from the cafe Mr. Burke, the deputy sheriff, said to

me that Lutlow had gotten away that day. I said, 'That is a bad man outside,' that is all that was said. I would not attempt to say that I heard all the discussion between the members of the jury. I voted for the death penalty from the beginning."

Ray Crow testified that he did not see the headlines in the newspapers; that he did not hear Mr. Burke, the deputy sheriff, make any mention of Lutlow's escape, but that on their way from the cafe to the courthouse he heard a prison break had occurred that day and Lutlow had escaped.

Neither Mr. Burke, the deputy sheriff, nor Mr. Bleimeyer were called to explain or deny the alleged misconduct. Art. 753, C. C. P., provides that where the jury, after having retired to deliberate upon a case, have received other testimony; or where on account of the misconduct of the jury, the court is of the opinion that the defendant has not received a fair and impartial trial, a new trial shall be granted. It has been held frequently that a statement by one juror to his fellow jurors of a fact within his personal knowledge, which was not developed at the trial, is misconduct and a new trial should be granted unless the presumption of injury arising therefrom is rebutted by evidence.

In the case of Weaver v. State, 85 Texas Crim. Rep., 111, in which reference is made to the Kannmacher case, 51 Texas Crim. Rep., 118, by this court: "wherein it is held that proof that one of the jurors was not originally in favor of the death penalty but consented to it because the jurors thought that wholesale killings in the county should be stopped, and that the death penalty should be inflicted to effect that purpose, was of such material character as to require a reversal." In the instant case the juror Bleimeyer urged his fellow jurors to impose the death penalty upon appellant to prevent future prison breaks and the killing of guards which would happen, if the defendant's punishment was assessed at life imprisonment, before he was there over a year. This was an unfavorable reflection on the defendant's character and imputed to him a bad reputation by one of the jurors, whose language would indicate that he had independent knowledge thereof. In the case of Mason v. State, 16 S. W., 766, a conviction of arson was reversed because of a discussion by the jury in their retirement of the burning in the same community of other buildings by unknown parties. We think that this case also falls within the rule announced by this court on a motion for a rehearing in the case of Snow v. State, 91 Texas Crim. Rep., 1.

It is our opinion that the testimony adduced at the hearing of the motion for a new trial based upon alleged misconduct of the jury showed that the jury in their deliberations discussed the reported prison break, the killing of a guard, and that one of the jurors asserted that appellant would not be there over a year before he would be doing the same thing. This was indirectly, if not directly, imputing to appellant a bad reputation which was highly prejudicial to him, and this was not controverted by the State. Of course, the testimony of the two jurors introduced by the State is to the effect that they did not hear such remarks made in the jury room, but no one denied that it took place as shown by the testimony offered by the defendant; hence we are constrained to believe that it did occur and was used by the jury to the detriment of appellant. Therefore the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

LATTIMORE, JUDGE.—The State moves for a rehearing, urging that we erred in our former opinion in holding it to be shown that during their deliberations the jury herein discussed a prison break and the killing of a guard, which had taken place the day before, and in saying in our opinion "This was * * * imputing to appellant a bad reputation which was highly prejudicial to him, and this was not controverted by the State." It is insisted that the trial court heard the four jurors who testified on the hearing of the motion for new trial, and found from their testimony as a fact that the killing of a guard was not discussed in the jury room, and that save for one remark by juror Bleimeyer,—made after the jury reached their room and resumed deliberation of the case upon returning from getting coffee,—all that was said about the prison break and the conviction of a prisoner named Lutlow,—was while the jury were on the street on said coffee trip, and was, therefore, not part of their deliberations, and is not shown to have affected their verdict.

Examining the record, we note that when the motion for new trial was heard, four jurors gave testimony,—two for the

State and two for the defense. A. B. Crow, for the defense, swore that while on a trip to get coffee there was some discussion about a prison break, and that Lutlow had escaped; but he did not remember what was said, but after they went back to the jury room one Bleimeyer commented on the fact that it often happened when parties were sent up for long terms, they escaped; at which point witness said he remarked: "I wouldn't discuss that, it might be ground for new trial." This juror affirmed that he was for life imprisonment, but later voted for the death penalty. Asked what made him change, he said: "Just generally on the evidence as a whole I concluded that the man deserved the death penalty." He also said the only juror he recalled who mentioned the prison break was Bleimeyer.

The other juror who swore for the defense was one Joyce, who said that on the coffee trip he noticed some headlines in a paper that there had been a prison break and a guard had been shot; and some remarks were made about it. He testified: "As far as I am concerned, I don't remember discussing it or hearing it discussed after we got back, just outside of the comments there by the newsstand." He further testified that after they got back he, Bleimeyer, A. B. Crow, the officer in charge, and one Hayman were in a separate room washing their hands, and Bleimeyer said: "You see what happened there today in the paper about breaking out of prison and shooting a guard. That is just exactly what will happen if we send this nigger to the penitentiary." Joyce testified that Crow then said to Bleimeyer: "You better not discuss that. That is something that should not be brought up in the jury room." Joyce said right then it ended. He further said he voted for life imprisonment until next to the last ballot; that he really felt that appellant was guilty to begin with; that he was entitled to a life term, but "After I deliberated and thought more and more about it and revolved the evidence over in my mind, I would say probably he had it coming to him. My change from life to death was based on my revolving and analyzing in my mind the evidence I heard from the witness stand and the law given by the court." These were the only witnesses offered by appellant on the hearing of the motion.

The State called juror Mansfield, who swore that on the street going back from the coffee trip Deputy Sheriff Burke remarked that Lutlow had gotten away that day, to which witness replied: "That is a bad man outside." That was all that

was said. Witness further testified that when they went for coffee the jury stood ten for the death penalty and two for life imprisonment. He said that on the second ballot all of the jurors voted guilty, and on the first ballot as to whether guilty of murder with malice, all voted affirmatively. He swore positively that there was no discussion in the jury room as to the jail break or anything pertaining to it. He further said he heard nothing of the prison break before the case was argued, and that there was no argument about it in the jury room. He testified that he was for the death penalty from the beginning.

The State also called juror Ray Crow, a brother of A. B. Crow, who was called by the defense. This witness swore that on the coffee trip he saw no headlines in a newspaper, and heard no discussion about any prison break among the jurors either in the jury room or while on the coffee trip. Cross-examined, he said he heard one mention of a prison break while on the coffee trip, but it was not discussed. He further testified that he voted for life imprisonment, and was one of the last to agree to the death penalty; that he and juror Muller were the last to come over. He said that several jurors argued with him and Muller, but he did not know who; they used different arguments. He seemed not to recall any of them. We have set out at some length the material points appearing in the statement of facts heard on the motion for new trial.

The question before this court is whether the trial court abused his discretion in refusing a new trial after hearing the evidence. We have uniformly held that unless we be convinced from the record that such refusal was clearly an abuse of such discretion, we would not reverse. See Kelly v. State, 95 Texas Crim. Rep., 138; Rosamond v. State, 97 Texas Crim. Rep., 639; Lamb v. State, 98 Texas Crim. Rep., 358. In Douglas v. State, 58 Texas Crim. Rep., 122, 124 S. W. Rep., 933, we said that whether an accused be granted a new trial for alleged misconduct of the jury is particularly cognizable by the trial court whose conclusion would not be interfered with on appeal unless clearly wrong and unsupported by testimony. See on this particular point Watson v. State, 82 Texas Crim. Rep., 305; Alexander v. State, 84 Texas Crim. Rep., 185; Reese v. State, 87 Texas Crim. Rep., 245. We quote what Judge Hawkins said in Kirby v. State, 96 Texas Crim. Rep., 590:

"When appellant asserted misconduct of the jury in the particular complained of the burden of proving it rested upon

him. The evidence taken upon hearing the motion rendered the question a controverted one (if the testimony of the juror Obenhaus can be said to have raised the issue) and it was within the province of the trial judge to settle the controversy; having done so his finding upon the matter would be conclusive upon this court unless an abuse of his judicial discretion in the matter clearly appeared. Howe v. State, 77 Texas Crim. Rep. 108, 117 S. W. Rep. 500; Shaw v. State, 32 Texas Crim. Rep. 155, 22 S. W. Rep. 588; Potts v. State, 56 Texas Crim. Rep. 47, 118 S. W. Rep. 535; Sanchez v. State, 90 Texas Crim. Rep. 518, 236 S. W. Rep. 734; Manley v. State, 92 Texas Crim. Rep. 537, 244 S. W. Rep. 533. For a collation of many other authorities upon the same point see Section 574, Branch's Ann. Pen. Code, page 295. The record presents no question of an abuse of judicial discretion upon the part of the learned trial judge in determining the issue of fact in favor of the State."

In Ross v. State, 98 Texas Crim. Rep., 567, Judge Morrow said:

"Misconduct is not defined, but judicial discretion is conferred upon the trial court to determine on the facts of each case whether the alleged misconduct is proved and whether its effect was to deprive the accused of a fair trial. * * * In this connection, if the proof of the new evidence is conflicting, the conclusion of the trial judge will not be overturned. Todd v. State, 93 Texas Crim. Rep. 559. If its materiality is doubtful, the discretion of the trial court in approving the judgment will prevail. Holt v. State, 51 Texas Crim. Rep. 15."

From what has been said it is manifest that the discretion of the trial court applies both to the question as to whether the allegel misconduct has been proved, and also whether, if proved, it was such as affected the fairness of the trial. Boiled down, the most that can be said for appellant's contention in this case is that after the jury came back from what we have called their coffee trip, four of them were in a room washing their hands when one of them, characterized by his fellows as a very talkative man, said: "You see what happened there in the paper today about breaking out of prison and shooting a guard. That is just exactly what will happen if we send this nigger to the penitentiary. He won't be there over a year, and he will be doing the same thing." It is shown that juror Crow said to him: "You had better not discuss that," and nothing further was said. Two of the four jurors there present and who heard what was said were used as witnesses for appel-

lant on the hearing of the motion for new trial, and both swore that they changed their vote to the death penalty afterward because they analyzed the testimony and concluded appellant should be given the death penalty. Neither asserted that he was influenced by what Bleimeyer said, and it must be apparent that any sensible man competent to sit upon a jury would necessarily know that what Bleimeyer was saying was merely his opinion and not a statement of a fact, and not anything about which he knew any more than the other jurors. In fact it is found by the court in his finding of fact that all of the jurors knew that prisoners had gotten away, and that putting any man in prison for a long term increased the chances of his escape, without this being disclosed by anyone.

That what Bleimeyer said was not discussed generally in the jury room is apparent. That if as mentioned, it was reproved and not repeated, is beyond question. Upon mature reflection we conclude that the court's action was well within his discretion from both the angles we have been discussing.

The State's motion for rehearing is granted, the judgment of reversal is set aside, and the judgment of the trial court is affirmed.

*Affirmed.*

### ON APPELLANT'S MOTION FOR REHEARING.

HAWKINS, JUDGE.—In the light of appellant's motion for rehearing we have again examined this record. His contentions revolve around the refusal of the trial court to grant him a new trial because of alleged misconduct of the jury, based on what was observed by them on a trip to get some coffee, on the night the verdict was returned,—and what was said by them after they came back to their jury room on said occasion. We note that after hearing all the testimony adduced on the presentation of appellant's motion, the court below made his findings of fact, in which he set out that there was a general discussion among the jurors of a prison break, and that one Lutlow had escaped, while the jury were down town after coffee on the night in question; also that when they returned to their jury room and resumed their deliberations juror Bleimeyer said, in substance, "You see what can happen when a man goes to the penitentiary for a long term of years." He also certifies that Bleimeyer was admonished by juror A. B. Crow that such discussion should not be indulged in, and upon this the discussion ceased. The court further found as a fact

that before being impanelled, each juror in the case knew that prison breaks frequently occur, and that life termers or prisoners with long sentences did escape, and that the information about Lutlow's escape did not apprise any of the jurors of any fact they did not already know. Further, he found that the jury received no new evidence, and was guilty of no misconduct.

As some reenforcement of the court's findings, if such be necessary,—we note that juror Mansfield testified on the hearing of the motion that when the jury went for coffee they stood ten for the death penalty and two for ninety-nine years; that jurors Mueller and the one of the Crow brothers who worked for the Frigidaire were the two for ninety-nine years. Juror Ray Crow was one of the four jurors who testified on the hearing of the motion, and he said that he worked for the Frigidaire, and was one of the jurors who was for ninety-nine years when they went for coffee; that he saw no headlines in the papers about a prison break, and heard no discussion among the jurors about such break when on the street, or after they got back to their room. He did hear such matter mentioned. It is thus made clear by the testimony of the juror Crow that his change from ninety-nine years to the death penalty was not caused or influenced by hearing any discussion of said prison break. Juror Mueller, the other juror who was for ninety-nine years, was not called on the hearing of the motion. Hence it appears to us that appellant's contention is wholly without ground of support; that the findings of the trial court, and the testimony of the jurors heard, are opposed to appellant's contention. It also appears that the jury went for coffee about 11 P. M., and that they did not agree upon their verdict until 2:30 A. M. In view of the finding of the court, and of the testimony that there was no discussion of the prison break in the jury room, other than the remark of Bleimeyer, it would appear reasonable to conclude that in the three hours discussion among the jurors, after they returned to their room, juror Mueller had plenty of opportunity to come to agreement with the other jurors, as did juror Ray Crow, without the exertion of any improper influence or argument. So believing, the motion for rehearing is overruled.

*Overruled.*

MORROW, PRESIDING JUDGE (dissenting).—This case, on the original hearing, was reversed and remanded upon the proof by several witnesses of misconduct of the jury which is

fully set out in the opinion written by Judge Krueger and approved by the court. On motion for rehearing by State's counsel, the order reversing the case was set aside and an affirmance was ordered, all of which appears from the record on file. At the time of the original hearing, it was the view of the writer that there was such misconduct on the part of the jury as required a new trial by a different jury. The writer is still of the opinion that the misconduct of the jury was such as to render it imperative that the accused be awarded a new trial. That having been denied, the writer is constrained to enter his dissent to the affirmance of the judgment.